STATE OF NEBRASKA, APPELLEE, V. STUART CARPENTER, APPELLANT.

150 N. W. 2d 129

Filed April 21, 1967.   No. 36507.

Kerrigan, Line & Martin, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Merritt E. James and Miles W. Johnston, Jr., for amicus curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is a felony action in which the defendant was prosecuted under two separate informations, one charging possession of burglary tools, and the other breaking and entering. On defendant's motion, the informations were consolidated for trial. Jury was waived by the defendant and the State, and the court, sitting without a jury, found the defendant guilty on both informations. Defendant has perfected an appeal to this court.

Essentially, the question presented by the defendant is legality of a search and seizure. The defendant concedes the evidence was sufficient to sustain a conviction if it was properly admitted. There are two other incidental questions involved, one of which is germane to the primary question, whether police officers of the city of Blair may stop a car just across and outside the city limits of Blair. The other question is whether a defendant may waive a jury in a felony case. We first address ourselves to this latter point.

As stated above, a jury was waived by both the defendant and the State. Defendant, who believes a jury was properly waived, suggests our consideration sua sponte because the case of Michaelson v. Beemer, 72 Neb.

761, 101 N. W. 1007, which has never been expressly overruled, states: "The judge of a district court has no jurisdiction to try and determine the guilt or innocence of a defendant charged with a felony who pleads not guilty, without a trial to a jury, and such jurisdiction cannot be conferred by consent of the accused." That case held in essence that the right to a trial by jury, as encompassed by Article I, sections 6 and 11, of the Constitution of Nebraska, was designed for the protection of the state as well as the defendant, and may not be waived. We now determine that holding was made under a misapprehension of the nature of the right involved. The right to a jury trial is personal to the defendant, and the state is without power to require one if the defendant wishes to waive it.

Subsequently, but without expressly overruling Michaelson v. Beemer, *supra,* we abandoned the position there taken. In Johnson v. State, 169 Neb. 783, 100 N. W. 2d 844, we held: "Any person charged with a criminal offense in the State of Nebraska is guaranteed, under the Constitution of the United States and of the state, due process of law, which includes the right to trial by jury and the right to defend in person or by counsel.

"The rights to trial by a jury and to be represented by counsel are personal privileges which may be waived."

Johnson v. State, *supra,* and the citations therein are sufficiently clear on this issue, and no further explanation is necessary. We do, however, expressly overrule Michaelson v. Beemer, 72 Neb. 761, 101 N. W. 1007, on this point.

The pertinent facts herein may be briefly summarized as follows: The defendant was driving his automobile, which was licensed in Dodge County, around the city of Blair sometime between 3 and 3:30 in the morning of April 12, 1966. He was accompanied by one Hawkins. His car was observed by two Blair police officers who were cruising in a patrol car. His car was first observed by the officers when they turned east off Nineteenth

Street and onto Grant Street in the city of Blair. It was then coming slowly toward them from the east. When the officers reached Thirteenth Street, defendant's car was turning north onto Lincoln Street, which was two blocks east, so the officers turned north on Thirteenth Street and then noticed the car go across Lincoln Street on north, so they went north one more block and turned east on Washington Street. When they turned east, defendant's car was stopping for a stop sign at Washington Street, and it then turned east ahead of them. The officers followed the car, turned on their red light, and stopped defendant's car on the east of Ninth Street, in a bulk station driveway, just outside the Blair city limits. The officers then observed that defendant's car was an Oldsmobile, licensed in Dodge County.

The defendant got out of his car on the left side, came back to the left side of the patrol car, and was questioned by officer Austin. Officer Cowan went to the Oldsmobile when defendant approached the patrol car, and asked the passenger to step out which he did, and as he did his feet struck something on the floor which gave off a metallic sound. As the passenger descended, Cowan flashed his light through the open door and saw what he recognized as pry bars. Cowan then asked officer Austin to take a flashlight and look in the front seat of the car which he did. Austin also saw pry bars sticking out of a bag. Defendant, in response to a question, said that these were tools he used in his job. Defendant was then asked to drive his car to the police station which he did, followed by the police car.

The officers testified that there had been burglaries in the vicinity where the car was cruising, and that not too long before a local business in that area had been entered by the aid of a pry bar. They had instructions to note any car in the vicinity they didn't recognize. They were suspicious of a car cruising slowly in that neighborhood in the early morning hours, and particularly of the fact that it appeared to turn off when they

approached it. They decided they should require the occupants to identify themselves.

The pry bars were sticking out of a bag in the front seat and were clearly visible to the eye when light was flashed into the front seat. The officers testified that they merely stopped the car for identification purposes. When they saw the pry bars they felt some investigation was necessary, and requested the occupants of the car to go to the police station. The officers called the sheriff who recognized defendant's associate as a known burglar with a previous conviction in Washington County. The defendant and his companion were then arrested and lodged in jail. Later that morning a search warrant was secured and the bag which was found to contain burglary tools was removed from the car.

It is the defendant's contention that the police officers were without statutory authority to act in an official capacity outside the territorial limits of the city. We do not agree with the defendant that an arrest was made at that time, so the question becomes one of whether the police officers had a right to stop the defendant's vehicle outside the city limits. Under the circumstances, we find they did.

We call attention to section 29-206, R. R. S. 1943, which provides as follows: "Every city, town or village marshal, lawfully holding such office, shall be the appropriate ministerial officer of the police court or mayor's court of the city or town or incorporated village, and as such shall have all the powers and be charged with all the duties of constables in the making of arrests, serving process and preserving the peace, as prescribed in criminal matters in sections 29-204 and 29-205."

Section 17-118, R. R. S. 1943, covering cities of the second class and villages provides: "The policemen of the city shall have power to arrest all offenders against the laws of the state or of the city, by day or by night, in the same manner as the sheriff or constable, and keep them in the city prison or other place, to prevent their

escape, until trial can be had before the proper officer."

Further, section 29-204, R. R. S. 1943, should also be considered. It provides: "Constables shall be ministerial officers of the courts held by justices of the peace in criminal cases, within their respective counties, and it shall be their duty to apprehend and bring to justice felons and disturbers of the peace, to suppress riots, and to keep and preserve the peace within their respective counties. They shall have power, and they are hereby authorized to execute all writs and process in criminal cases throughout the county in which they may reside and where they were elected or appointed."

We also call attention to section 29-829, R. S. Supp., 1965, which provides as follows: "A peace officer may stop any person in a public place whom he reasonably suspects of committing, who has committed, or who is about to commit a crime and may demand of him his name, address and an explanation of his actions. When a peace officer has stopped a person for questioning pursuant to this section and reasonably suspects he is in danger of life or limb, he may search such person for a dangerous weapon. If the peace officer finds such a weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of questioning, at which time he shall either return it, if lawfully possessed, or arrest such person. For purposes of this section, peace officer shall include credentialed conservation officers of the Game, Forestation and Parks Commission."

Defendant is laboring under the misapprehension that the same rule on probable cause applies when a person is merely stopped and questioned as when he is arrested. Defendant's approach presents a clash of interest between the protection of the public and the right of an individual. His premise is false and would cripple law enforcement. To require that a police officer must have probable cause for arrest before he can stop and question a person would extend the Constitution beyond

the realm of reasonable intendment. By so holding, we would be unduly limiting police power for the mere sake of limitation. To do so would emasculate crime prevention and render peace officers impotent and useless. Individual rights on occasion must give way to the rights of society. This is the very purpose of law—to restrict the rights of the individual to provide protection for society. It is not possible to ignore the fact that police officers are charged with the duty to prevent crime as well as to detect it. Often an immediate inquiry is an indispensable attribute to the prevention and discovery of crime. This is particularly true where a moving vehicle is involved. Then, time is of the essence. Unless the vehicle is stopped and the occupants identified, it may be impossible to connect them to the area if a crime is later uncovered.

Here, defendant was cruising after 3 o'clock in the morning, in an area where burglaries had occurred. The officers had been alerted to check suspicious cars. They knew of no crime that had been committed, but they might reasonably believe one had been or was in the process of being committed. The situation was such that the officers wanted to identify the car and its occupants with the area. When it became apparent the car was from another county, this was even more pertinent. The action was certainly within the range of good, or at least justifiable, police procedure. A prompt inquiry, because time was of the essence, was in order and the officers made it.

As we interpret this record, defendant was not arrested upon mere suspicion, as he here contends. This case is not in any sense analogous to Beck v. Ohio, 379 U. S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142, relied on by the defendant. Here no search, as that term must be interpreted under the facts herein, was made until after a search warrant was secured. Defendant was stopped because of suspicious actions in a routine attempt to ascertain his identity. This was not in any sense an ar-

rest. In the process, and without entry into the car, the police officers saw objects which justified temporary detention for further investigation. At that stage, sufficient grounds existed for a reasonable belief that the objects seen in the car were burglary tools.

Every temporary restriction of the absolute freedom of movement is not an arrest. There is a detailed dissertation on arrest, and the right to stop and question, in United States v. Bonanno, 180 F. Supp. 71, where the distinctions are analyzed and explained. Particularly pertinent here is the following from Justice Burton, quoted in United States v. Bonanno, *supra:* " 'It is only by alertness to proper occasions for prompt inquiries and investigations that effective prevention of crime and enforcement of law is possible.' "

The existence of probable cause must be determined by a practical and not by any technical standard. The sight of what appeared to be burglary tools in the car, under the circumstances, was at the very least an exceptional circumstance, and was justification for investigation. By doing as they did, the officers were giving the defendant a chance to exculpate himself if no cause for arrest existed. The defendant was requested to drive to the police station where his companion was identified as a known burglar. This, in the light of the other circumstances, was sufficient for any police officer of reasonable caution to believe probable cause existed for an arrest for the possession of burglary tools. The arrest was then made.

This is not an attempt, as defendant argues, to establish probable cause by the fruits of an unlawful search and seizure. Defendant's entire argument on suppression of evidence is premised on his assumption that when the police officer flashed his light into the front seat of the car, through the open door, this constituted an unlawful search of the car.

It is questionable as to whether any search was actually made until after the search warrant was secured.

It is not necessary to decide this point, because by no stretch of the imagination could what defendant terms a search be considered an unlawful search. A search implies some exploratory investigation. It is not a search to observe that which is open and patent, in either sunlight or artificial light. See, Smith v. United States, 2 F. 2d 715; Davis v. United States, 327 F. 2d 301; United States v. Ball, 344 F. 2d 925.

In Davis v. United States, *supra,* the rule is thus stated: " 'It is well established that it is not a search to observe what is open and patent either in daylight or in artificial light. United States v. Lee, 274 U. S. 559, 47 S. Ct. 746, 71 L. Ed. 1202; Boyd v. United States, 4 Cir., 286 F. 930; Smith v. United States, 4 Cir., 2 F. 2d 715; Safarik v. United States, 8 Cir., 62 F. 2d 892, 895 * * *.' Petteway v. United States, 261 F. 2d 53, 54 (4 Cir. 1958). As was said by Judge Holtzoff in United States v. Mc-Daniel, 154 F. Supp. 1, 2 (D. C. 1957), affirmed 255 F. 2d 896 (D. C. Cir., 1958) and cert. denied, 358 U. S. 853, 79 S. Ct. 82, 3 L. Ed. 2d 87 (1958), Williams v. United States, 363 U. S. 849, 80 S. Ct. 626, 4 L. Ed. 2d 1732 (1960), 'if, without a search and without an unlawful entry into the premises, a contraband article * * * is seen in the premises, the police are not required to close their eyes and need not walk out and leave the article where they saw it.' "

In Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726, police officers entered the apartment of a narcotic suspect to arrest him, and when his wife emerged from an adjoining room, one of the officers walked over and looked into the room without entering, and saw a scale and what appeared to be a brick of marijuana. In that case, Justice Clark, in the majority opinion, said: "We cannot say that it was unreasonable for Officer Berman, upon seeing Diane Ker emerge from the kitchen, merely to walk to the doorway of that adjacent room. We thus agree with the California court's holding that the discovery of the brick of mari-

juana did not constitute a search, since the officer merely saw what was placed before him in full view."

In State v. Huffstutler, 269 Minn. 153, 130 N. W. 2d 347, the Minnesota court said: "In answer to defendant's claim that he was prejudiced by the admission in evidence of the flashlight which he claimed was illegally seized, we need only point out that the flashlight was not the fruit of a search at all since it was seen by the police through the window before the car was entered. 'To see that which is in plain sight is not a search.' People v. Davis, 188 Cal. App. (2d) 718, 10 Cal. Rptr. 610, 613. See, also, People v. Cardella, 233 Mich. 505, 207 N. W. 141; Halbach v. State, 200 Wis. 145, 227 N. W. 306."

Under the facts of this case, it would strain credulity to hold that turning the beam of a flashlight into an open automobile was an unlawful search. The automobile was not entered until after the defendant was arrested and a search warrant secured. There is nothing in the procedure followed in this case which would in any manner taint the evidence secured under the search warrant, and the motion to supress it was properly overruled.

For the reasons stated, the judgment herein is affirmed.

AFFIRMED.