STATE OF NEBRASKA, APPELLANT, V. DAROLD FORNEY, APPELLEE.

150 N. W. 2d 915

Filed May 19, 1967. No. 36630.

Lawrence E. Mitchell and Michael V. Smith, for appellant.

Fisher & Fisher, for appellee.

Heard before SPENCER, J.

SPENCER, J.

This is an appeal by the State from the sustaining of a motion to suppress evidence, pursuant to section 29-824, R. R. S. 1943. Briefs were filed, and arguments were heard in camera May 8, 1967.

About 3 a.m. on November 25, 1966, the deputy sheriff of Cherry County, hereinafter referred to as deputy sheriff, who lived at Merriman, Nebraska, was notified by a telephone call of a burglary in Merriman. Immediately thereafter he heard a car pass his house and noted that it was traveling at high speed west on U. S. Highway No. 20, hereinafter referred to as highway 20, in the direction of Gordon, Nebraska, which is west of Merriman in Sheridan County. He alerted the Gordon police department, and then left for Gordon with the marshal from Merriman.

In response to the alert, a Gordon police officer stationed himself in a police car at the east edge of Gordon. Approximately 20 minutes thereafter he observed an automobile coming from the east on highway 20. He followed this automobile to a cafe located on highway 20, just west of Gordon. When defendant stopped at the cafe, the officer asked the defendant, who was known to him, where he came in from, and defendant said "Rushville." Defendant asked if there was anything wrong, and the officer told him " '* * * they just had a little deal down to Merriman.' " Rushville is west of Gordon, and defendant's car came from the east. The officer then contacted the deputy sheriff by radio, and

drove back into Gordon to await his arrival. When the deputy sheriff arrived, they each drove their cars to the cafe. The officer then went to the police station to call the chief of police and the sheriff.

When the defendant and his companion came out of the cafe the deputy sheriff identified himself and told the defendant they wanted to ask him some questions if he would go down to the police station in Gordon, and defendant said " 'All right.' " The defendant drove to the police station, followed by the deputy sheriff and the Merriman marshal. At the police station they found officer Case and officer Lennox, Gordon police officers, who were known to defendant. After they arrived at the police station the deputy sheriff asked the defendant where he was at approximately 3 a.m., and defendant replied "Rushville."

Officer Case then asked defendant if they could look in his car, and defendant said " 'Yes.' " They went out to the car, which was sitting in front of the police station. Officer Lennox asked defendant if he would open the trunk of the car, and defendant said " 'yes' " and did so. Officer Lennox then asked defendant if they could look in the front seat, and defendant replied " 'Yes.' " One of the officers looked in the front seat and observed a bag on the floor, which he picked up. They also observed a holstered, loaded revolver, with its barrel protruding out from under the front seat. Officer Case then told the defendant that he was going to have to hold him, and said, " 'I want to advise you of your rights.' " The officer advised defendant that anything he said could be used against him; that he did not have to answer any questions; and that he was entitled to a lawyer. The defendant asked the officer if he could make a call, and he was allowed to do so. Subsequently, complaints were filed against the defendant, charging him with carrying a concealed weapon and with grand larceny. Defendant filed a poverty affidavit, and counsel was appointed to represent him. A preliminary hearing was held, and

defendant was bound over to the district court. The motion to suppress followed.

The defendant, who testified on the motion, was asked by counsel as to the conversation in regard to searching his automobile. His answer is as follows: "A Well, they asked me if I was—they could search my car, and I said, 'Yeah, go ahead.' I couldn't stop them. Q And did they then? A Yeah, we went out, and they looked through it. And they wanted me to open the trunk, so I opened the trunk. And they wanted to look in the front, and so I let them. Q They went ahead and looked? A Yeah. * * * Q What did you tell them about the search of the car, so there is no misunderstanding? A Well, when they first asked me, I said, 'Yeah, go ahead.' That I couldn't stop them. And after that I just said, 'Go ahead.' "

All of the officers testified for the State. They were all positive defendant said nothing but " 'Yes, go ahead.' " Defendant was asked his consent again on two later occasions. He said "Yes" when he was asked if he would open the trunk, and he did so. After the trunk was open, officer Case again asked defendant if it would be all right if they looked in the front seat, and defendant said " 'Yes.' "

The trial court sustained the motion to suppress on the theory that in order for a consent to be voluntary it was necessary that the defendant be first advised that he need not submit to a search, and that if he does consent, the fruits of the search may be used as evidence against him. To reach this result the trial court held that Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, which involved the Fifth and Sixth Amendments to the Constitution of the United States, by analogy was applicable to search and seizure under the Fourth Amendment to the Constitution of the United States. While I concede that protection from unreasonable searches and seizures is fully as important and imperative as the guarantees provided by the Fifth Amend-

ment to the Constitution of the United States and is basic to a free society, I do not agree with the trial court's premise. So far as I have been able to determine, the United States Supreme Court has not applied the Miranda test to searches and seizures. Until it does so, if it ever does, we should not further shackle law enforcement. When we put the burden on the State to affirmatively prove the voluntariness of the consent, we adequately protect the rights of the defendant. Miranda v. Arizona, *supra*, in this jurisdiction will be applied only to the issue tried therein, and will not be extended by analogy to cover the Fourth Amendment to the Constitution of the United States.

Ignoring, therefore, the premise on which the trial court predicated its decision, the question remains, did the defendant voluntarily consent to the search herein? There is no illegal search and seizure of objects found in defendant's automobile, even if defendant was not under arrest, and even if the officers did not have a search warrant, if defendant freely and intelligently gave his consent to the officers making the search. See Burge v. United States, 332 F. 2d 171, a decision of the United States Court of Appeals for the Eighth Circuit involving a Nebraska case.

If the defendant consented to the search herein, he waived the protection afforded him by the Fourth Amendment to the Constitution of the United States. However, the State has the burden to prove voluntary consent by clear and positive evidence. A consent is not voluntary if it is the result of duress or coercion, either actual or implied. Is there any indication in this record which would tend to show that defendant's consent was the result of coercion, either actual or implied? There certainly is no evidence of actual coercion, so if coercion is present herein it must be implied from the fact that the defendant was at the police station when he gave consent. This, however, does not ipso facto make the consent involuntary. This is clearly a fact, among

others, to be considered in the determination of the issue of voluntariness. Being in a police station or in custody was not a unique experience for the defendant. He admits he has two previous felony convictions.

Defendant does not deny he gave consent to the search. He merely implies he did so because he felt it would do no good to object. Even if this is not a mere afterthought, it is not of itself sufficient to indicate coercion under the circumstances in the light of defendant's background and experience. Defendant does not even suggest that he was threatened or intimidated in any manner, and, as previously noted, contact with police officers was not a new experience for him. However, there is much more than mere acquiescence in defendant's conduct herein. Affirmative consent may be established by acts entirely aside from the use of words. People v. Guyette, 41 Cal. Rptr. 875, 231 Cal. App. 2d 460. On three different occasions defendant gave his consent and additionally he opened his automobile trunk for inspection.

In Robinson v. United States, 325 F. 2d 880, the United States Court of Appeals for the Fifth Circuit held that when defendant gave his automobile keys to a federal officer without objection upon request, he voluntarily consented to the search of his automobile. Here the defendant actually opened the trunk for the officers.

In Wren v. United States, 352 F. 2d 617, the United States Circuit Court of Appeals for the Tenth Circuit held that a defendant, by opening his automobile trunk with a key to permit a search of that part of the car, consented to the search of the automobile and could not suppress the questioned firearm found underneath one of the seats. In the present case, the defendant gave specific consent to the search of the front seat where the questioned articles were found.

I find that there was no coercion herein, either actual or implied. Under the totality of all the circumstances, I hold defendant's consent to be voluntary and find that

the motion to suppress the questioned articles should be overruled.

INTERLOCUTORY ORDER ENTERED.