STATE OF NEBRASKA, APPELLEE, v. MARVIN DILLWOOD,
APPELLANT.

160 N. W. 2d 195

Filed July 5, 1968. No. 36817.

A. Q. Wolf and Fred J. Montag, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

In prosecution of defendant for burglary of a fur store, furs taken from defendant's Ford automobile were admitted into evidence. A jury found him guilty, and he has appealed. He contends that no probable cause existed for the warrantless search and that the search was incident to an illegal arrest. For those reasons, he says, the district court should have suppressed the furs from evidence.

Aulabaugh Fur Store, 2951 Farnam Street, Omaha, Nebraska, was located at the southwest corner of the intersection of Farnam Street with Park Avenue. Employees of the store placed three furs in a front display window during the morning of Saturday, February 11, 1967. Tape attached to the window, which faced north toward Farnam Street and east toward Park Avenue, formed part of the "ADT" alarm system.

On Monday, February 13, 1967, detective Dragoun, an Omaha officer, was cruising alone in an unmarked Plymouth automobile on Park Avenue. An ADT alarm at 2:40 a.m. sent him from a point only 1½ blocks south of Farnam Street to the fur store. Without a stop he noticed broken glass of the display window and part of a mannequin in front. Seeing no vehicular traffic or pedestrian in the vicinity, Dragoun drove northward across Farnam Street and up a hill toward Douglas Street. While he was climbing the hill, he saw an automobile with round taillights a block ahead. It was moving northward on Park Avenue at the top of a hill between Douglas Street and Dodge Street. The grades of the two hills were 20 to 25 percent.

Dragoun accelerated in pursuit, but when he reached the top of the second hill, the automobile with round taillights was out of sight. At Dodge Street, which was one-way westward, he turned left toward Thirtieth Street and Turner Boulevard. As he crossed Thirtieth Street, he saw only two automobiles. One, located west of the boulevard, did not have round taillights. The other had round taillights similar to those on the automobile he was pursuing. It was moving northward on Thirtieth Street. Dragoun immediately returned via the boulevard to Thirtieth Street where he again saw the automobile. It appeared to accelerate. Dragoun followed it northward to Cass Street, then eastward to Twenty-eighth Avenue, and then northward to California Street which was protected by stop signs on the avenue. The chase ended there.

The ADT alarm had also been received by detective Chamberlin. From his location on Thirtieth Street approximately 16 blocks north of the fur store, he had immediately proceeded southward in an unmarked Plymouth automobile. In radio communication with Dragoun, Chamberlin drove 8 blocks to California Street where he turned eastward. Nearing Twenty-eighth Avenue, he identified Dragoun's Plymouth which was

following a Ford automobile northward toward California Street. When the Ford stopped at the stop sign, the detectives parked so as to block the avenue. The occupants of the Ford were defendant driver and one other man.

Defendant exited on the run. At approximately the same time the detectives jumped out with pistols drawn. Defendant ran westward 20 feet where he stopped upon the detectives' threats to shoot him. While Dragoun was covering the passenger, who had stepped out, Chamberlin with pistol in hand led defendant by the arm back to the Ford. Patting defendant's clothing revealed a loaded revolver in his waistline, and he was placed under arrest. Chamberlin then looked through the open window of the Ford. Plainly visible on the back seat were 3 furs that proved to be those taken from the display window. Dragoun without entry had seen the furs through an open door prior to the end of defendant's flight.

We apply the fundamental criteria of constitutional search established by the United States Supreme Court. Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726. An officer with probable cause to believe that an automobile is carrying stolen property ordinarily possesses authority for a warrantless search of the automobile. See, Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Rios v. United States, 364 U. S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688. The standard for determining probable cause for search and seizure is practical and not technical. Beck v. Ohio, 379 U. S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142.

"The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is

imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry v. Ohio, — U. S. —, 88 S. Ct. 1868, 20 L. Ed. 2d —.

With knowledge of the alarm, the broken window, and the mannequin's location Dragoun would have been naive to believe that an accident had occurred. Stopping the Ford precipitated kaleidoscopic events: The hasty exits, the drawn pistols, and short flight. Dragoun and Chamberlin, wearing plain clothes and driving unmarked automobiles, initially had no opportunity to announce their authority or purpose. Their conduct and defendant's conduct up to some point in the flight were in part independent of each other. It was almost impossible for the drawn pistols in particular to be either a cause or a consequence of defendant's decision to flee. The commands to halt, reinforced by threats to shoot, were strong measures; yet they were necessary for the detectives to freeze the situation. The forcible stops of the Ford and defendant were reasonable.

Defendant argues that Chamberlin's taking him by the arm to return to the Ford constituted an arrest. We think not. A similar argument was made in Terry v. Ohio, *supra*: "Petitioner * * * does not say that an officer is always unjustified in searching a suspect to discover weapons. Rather, he says it is unreasonable for the policeman to take that step until such time as the situation evolves to a point where there is probable cause to make an arrest." Petitioner's point of view was rejected:

"There are two weaknesses in this line of reasoning, however. First, it fails to take account of traditional limitations upon the scope of searches, and thus recognizes no distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons. * * *

"A second, and related, objection to petitioner's argument is that it assumes that the law of arrest has already worked out the balance, between the particular interests involved here—the neutralization of danger to the policeman in the investigative circumstance and the sanctity of the individual. But this is not so. An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prosecution. * * * It does not follow that because an officer may lawfully arrest a person only where he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest."

Visual observation without physical entry into the Ford led to seizure of the, furs. The detectives had a right to stand next to the Ford, and the furs were in plain view. The seizure was permissible under the general rule that has been recently applied to random observation. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be, introduced in evidence." Harris v. United States, 390 U. S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067. See, also, State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129; State v. Huffman, 181 Neb. 356, 148 N. W. 2d 321.

The judgment is affirmed.

AFFIRMED.