STATE OF NEBRASKA, APPELLEE, v. DENNIS LAVERN HARDING, APPELLANT.

165 N. W. 2d 723

Filed March 14, 1969. No. 37020.

Edward E. Hannon, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and NEWTON, JJ., and HASTINGS, District Judge.

WHITE, C. J.

From a jury conviction and a sentence to a prison term of 2 years, for the possession of marijuana under section 28-452, R. R. S. 1943, the defendant appeals. We reverse the judgment of the district court and remand the cause for a new trial.

On appeal three questions are presented for determination: (1) That the search of an automobile owned by the defendant Harding, which search yielded substances identified as marijuana, was without probable cause and unreasonable and that therefore the evidence obtained by the search was erroneously admitted in evidence; (2) that the written confession of Dennis Harding, the defendant, which was transcribed by the district court reporter, who was deceased at the time of the trial, was erroneously admitted in evidence; and (3) that certain expert opinion testimony identifying the material found in his possession as marijuana should have been excluded.

On the afternoon of November 9, 1967, Duane Henn, the deputy sheriff of Holt County, received a note from a prisoner in the county jail which advised him that a second prisoner had knowledge of the defendant's possession of marijuana. The deputy sheriff had reason to believe the first informer because he had provided reliable information concerning the purchasing of liquor for a minor on a previous occasion. He talked with the second informer who stated that several days prior, the defendant identified a weed as marijuana and told him that marijuana had been smoked in the defendant's apartment and that upon one occasion he had smoked

marijuana with the defendant. He also stated that during the preceding weeks, he had gone hunting with the defendant and upon several occasions he and the defendant had stopped on county roads and picked what the defendant identified as marijuana and placed it in the back of a green 1956 model Chevrolet station wagon.

The second informer also advised that a brother or a friend from California was staying with the defendant and was returning shortly to California and might take the marijuana with him. Later the same afternoon, on the basis of the above information, the deputy sheriff filed an affidavit requesting a search warrant. A search warrant was issued by the county judge authorizing a search of the defendant's apartment. The search was delayed until the early morning of November 10, 1967, when a state narcotics agent arrived to aid in the search. At that time, the deputy sheriff, a state narcotics agent, the chief of police of O'Neill, Nebraska, and two state troopers served the warrant on the defendant and proceeded to search the apartment. No evidence was found in the initial search except what appeared to be marijuana seeds or particles in the bottom of a vase in the defendant's apartment. After the search of the apartment, the deputy sheriff proceeded to a green 1956 Chevrolet station wagon parked in front of the defendant's apartment. After checking the registration and finding it to identify the defendant as owner of the automobile, the deputy sheriff searched the automobile and in the rear storage compartment where the spare tire is normally stored found several plastic bags filled with the material which was later identified as marijuana.

The deputy sheriff confronted the defendant with this evidence and the defendant thereafter produced from the bedroom of the apartment other plastic bags filled with what appeared to be marijuana. At that point the defendant was arrested and given the Miranda warnings.

The defendant was then removed to the county jail

and evidenced an intention to give a voluntary statement to Mr. McElhaney, the district court reporter. The Miranda warnings were again given and a statement was given in the presence of Mr. McElhaney, the court reporter, which was stenographically taken and later transcribed. Others who were present at the time the voluntary statement was made after the Miranda warnings were given were, the deputy sheriff, a state trooper, and two of the city's police officers.

At the preliminary hearing on motion to suppress, the district judge sustained the motion with respect to all evidence obtained in the apartment on the grounds that the affidavit for the search warrant was insufficient and at the same time overruled the motion with respect to the evidence obtained by a search of the automobile. The plastic bags of marijuana found in the defendant's green Chevrolet 1956 station wagon were admitted in evidence at the trial.

The central issue here is whether the independent search of the automobile, not based upon or connected with the invalid search of the apartment, and conducted without a search warrant, conformed to the constitutional safeguards in the Fourth Amendment prescribed for warrantless searches and seizures. The search of the defendant's automobile must be carefully scrutinized because of the lack of the "detached, neutral scrutiny of a judge" that is always present when a search warrant based upon an affidavit showing probable cause is first issued. See Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889.

The United States Supreme Court requires that probable cause exists for an arrest before a warrantless search can be made of the premises or other property of the suspects. Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726; Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327; Beck v. Ohio, 379 U. S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142. Probable cause for arrest in Nebraska without a warrant exists when it appears

that a felony has been committed and there are rea-. sonable grounds to believe that the person involved is guilty of the offense. State v. O'Kelly, 175 Neb. 798, 124 N. W. 2d 211 (1963). In State v. O'Kelly, *supra,* this court concluded: (1) That whether an arrest without a warrant satisfied probable cause depends upon the reasonableness of the actions of the police officer, and (2) that the definition of probable cause in Nebraska conformed to the constitutional criteria expressed under the decisions of the United States Supreme Court.

The probable cause requirement as it relates to the State's control of narcotics is found under section 28-472.01, R. R. S. 1943, which permits a peace officer having probable cause to believe that a vehicle is being used for the unlawful transportation of narcotic drugs, to make search with or without a warrant and that "where a search is made without a warrant the officer shall take the vehicle and the person in charge thereof into custody." Since possessing narcotics or having them under control is a felony in Nebraska, the above statute incorporates the same standard of probable cause for police action without a warrant in crimes relating to narcotics as governs police action in other criminal areas.

It is not necessary that an actual formal arrest occur before a search is undertaken as long as probable cause for arrest does exist prior to the search. In Lavato v. People, 159 Colo. 223, 411 P. 2d 328 (1966), involving a search of the defendant for narcotics before formal arrest, the court said: "It is not significant whether the search here preceded or followed the formal arrest procedure. As is pointed out by Justice Traynor writing for the California Supreme Court in People v. Simon, 45 Cal. 2d 645, 290 P. 2d 531, 533, '* * * if the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested and the place where he is arrested, there

is nothing unreasonable in his conduct if he makes the search before instead of after the arrest.' The controlling factor is whether the officer had reasonable grounds before the search to make an arrest and whether the search and seizure incident thereto were justified under the rules we have laid down."

Justice Harlan, concurring in Sibron v. New York, 392 U. S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917, recognizes this same concept: "Of course, the fruits of a search may not be used to justify an arrest to which it is incident, but this means only that probable cause to arrest must precede the search. If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden. There is *no* case in which a defendant may validly say, 'Although the officer had a right to arrest me at the moment when he seized me and search my person, the search is invalid because he did not in fact arrest me until afterwards.'"

The constitutional issue therefore turns on the issues of whether, at the moment prior to a search of the defendant's automobile, the deputy sheriff had probable cause to believe that a felony had or is being committed, and that the defendant was the person believed to be guilty of the offense, and whether the deputy sheriff acted reasonably in searching the automobile.

The deputy sheriff had information from an informant that defendant possessed a 1956 green Chevrolet station wagon and that several days prior had picked what the defendant defined as marijuana with the informant and had placed such marijuana in the rear of the automobile. The informant also disclosed that he and the defendant had smoked what defendant defined as marijuana in his apartment, and that defendant's brother or friend from California was staying with the defendant and was about to return to California with the marijuana. The deputy sheriff had sufficient reason to believe that the information was substantially correct because of the informer's participation with the defendant.

In Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed 2d 327 (1959), the United States Supreme Court held that probable cause to arrest and search without a search warrant does exist where information to constitute probable cause is given by an informer who is proven to be reliable.

In the recent case of McCray v. Illinois, 386 U. S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62, the Supreme Court would not disturb a finding of probable cause for issuance of an arrest and search warrant if the police officer had reason to believe the information from an informer was reliable, and stated: "There can be no doubt, upon the basis of the circumstances related by Officers Jackson and Arnold, that there was probable cause to sustain the arrest and incidental search in this case. (Citations omitted.) Unlike the situation in Beck v. Ohio, 379 U. S. 89, each of the officers in this case described with specificity 'what the informer actually said, and why the officer thought the information was credible.' The testimony of each of the officers informed the court of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable."

In the present case the admission by the informer of participation in the smoking of marijuana with the defendant, and of the gathering of the marijuana with the defendant, would justify the belief that the defendant had possessed marijuana.

There were other considerations immediately prior to the search of the automobile which would justify the deputy sheriff's belief that probable cause did exist for arrest and search and that a search should be made without the delay pursuant to obtaining a search warrant for the automobile. The inherent mobility of the automobile made it unrealistic to follow the procedure in obtaining another search warrant for the automobile in

view of the fact that the defendant was at that time put on notice by the presence of the law enforcement officers and their belief that narcotics were somewhere in the possession of the defendant. The deputy sheriff also had a description from the informant of defendant's automobile and that it had been used to transport marijuana. That description matched the description of the automobile parked in front of defendant's apartment.

The recent case of State v. Dillwood, 183 Neb. 360, 160 N. W. 2d 195 (1968), announces the test of reasonableness in judging a police officer's actions based on probable cause in searching and seizing without a search warrant. "* * * Would the facts available to the officer at the moment of the search or the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate?"

Police officers must be given reasonable latitude in judging whether probable cause exists. Unless their actions are based on an unwarranted belief that probable cause exists and are therefore unreasonable, their arrests and searches conform to constitutional guidelines. The right of an individual to be free from unwarranted intrusions on his person and property should be balanced against the need for effective law enforcement which can only exist where an officer's actions are measured objectively against a standard of reasonableness.

The actions of the deputy sheriff in searching defendant's automobile without a search warrant satisfied the constitutional requirement of probable cause.

The defendant also contends that his alleged written confession, taken stenographically and transcribed by Ted McElhaney, the Holt County district court reporter, should not have been admitted. The defendant, although making a voluntary statement before trial, neither signed nor in any way acknowledged what was purported to be his statement. McElhaney died before trial and therefore could not testify as to its accuracy. The statement as transcribed was admitted after foundation was laid

through the testimony of the deputy sheriff and the state trooper who were present at the time the statement was taken. Each testified, in effect, that the statement as transcribed was a complete and accurate reproduction of the questions asked of and answered by the defendant, but conceded that they did not have a positive recollection of each question and answer. The written statement was admitted over the objection of defendant's counsel.

The issue is whether, in a criminal case, a written confession, taken stenographically and subsequently transcribed, which was neither signed nor acknowledged by the defendant, and which cannot be tested for accuracy by examination of the stenographer is admissible. We hold that it is inadmissible. It is inadmissible not because of the method by which it was obtained. It was shown to be voluntary. It is inadmissible because the right of confrontation and right of cross-examination were not present to assure its accuracy.

We are dealing here with an extra-judicial statement which purports to be the confession of a crime to another person, not present in the courtroom and not subject to the right of confrontation. We are dealing with a situation where there is no acknowledgment in any way by the declarant to assure its accuracy. The right of cross-examination, of course, is completely absent. The physical and mental condition of the reporter, the opportunity for the jury to test his credibility, and the procedure by which the original shorthand notes are transcribed cannot be ascertained. It is common knowledge that such shorthand notes often are orally transcribed into a dictating machine and may be retranscribed by several people before they reach their final form in the purported written confession. There is no opportunity available to the defendant to examine this procedure. The extra-judicially signed and unacknowledged statement of the transcriber to the effect that it does contain a true and accurate statement of the con-

fession taken is subject to the same indictments. Nor does such a statement or purported confession contain any of the coloring sanctity of a legally prescribed procedure which protects the authenticity and integrity of regular court proceedings. This, despite the fact that it appears that the statement was actually taken by an officer, whose certificate in another context, when statutory requirements were met, would carry judicial and evidentiary weight under the law. The above considerations all have peculiar weight in light of the fact that a written transcribed document purporting to be a written confession of a criminal defendant carries peculiar weight in the minds of jurors and, indeed, of any judicial fact finder. We point out that nothing we have said herein negates the admissibility of independent evidence verifying the authenticity of oral statements or admissions the defendant made at the same time the testimony was transcribed by the reporter. What we are dealing with here is the admissibility of the written document itself into evidence as purporting to carry weight on the central issue of proof beyond a reasonable doubt as to the essential facts of the crime committed. It carries a much greater significance than a corroborated oral statement, confession, or admission which means in particular that it must be subjected to the historic rights of confrontation and cross-examination.

In a search of decisions in all other jurisdictions, including the federal courts, we have been unable to find any cases which have held that an adequate foundation for the admissibility of a written confession may be made extraneous to the signature or acknowledgment of the purported confessor or without the testimony of the person who took the notes and transcribed them. State v. Terrell, 175 La. 758, 144 So. 488; State v. Eisenhardt, 185 La. 308, 169 So. 417; State v. Cleveland, 6 N. J. 316, 78 A. 2d 560, 23 A. L. R. 2d 907; State v. Folkes, 174 Ore. 568, 150 P. 2d 17; People v. Kenny, 20 App. Div. 2d 578, 246 N. Y. S. 2d 92; Williams v. State (Fla. App.),

185 So. 2d 718; People v. Duffy, 23 App. Div. 2d 699, 258 N. Y. S. 2d 209. Many jurisdictions prohibit the admission of any written confession which is not signed or acknowledged, regardless of whether the person transcribing the statement testifies as to its accurary. Williams v. State, *supra;* State v. Cleveland, *supra;* 2 Wharton (12th Ed.), Criminal Evidence, § 340, p. 19.

The general rule governing the admissibility in evidence of a written document purporting to be the unsigned written confession of a defendant is stated as follows: "When an oral confession is taken down stenographically and then transcribed, the admissibility of the written transcript in evidence when it was neither read nor shown to the accused between the making of such transcript and its offer in evidence is generally denied." 2 Wharton (12th Ed.), Criminal Evidence, § 340, p. 19.

The above authorities also generally hold that the admission of such an invalid written confession is prejudicial error. This is because of the peculiar weight of the written document itself being admitted and subjected to the constant view of the jury. Again we point out that there is nothing in our holding which prevents a court reporter or other competent witness to testify to the oral admissions and confessions of the defendant, provided, of course, adequate foundation in other respects is laid. The courts have generally held that the written confession carries a particular weight of its own and the courts will no examine into the uncertain question of whether it carried the balance of proof or may have been the "fulcrum upon which the verdict turned." See State v. Cleveland, *supra.*

We note the case of Fields v. State, 125 Neb. 290, 250 N. W. 63 (1933). In that case this court held that a stenographer who had not transcribed her notes taken of a confession of a defendant could testify upon the witness stand as to the statements made by the defendant by reading from her notes. This case, of course, is far different from the admission of the written document

itself purporting to be a confession, based upon testimony by persons other than the stenographer or the court reporter who actually took the testimony in shorthand and transcribed the notes. We come to the conclusion that the admission of the purported written confession in this case was prejudicial error and that a new trial must be granted.

The defendant next contends that proper foundation was not laid for the admissibility of Dr. McConnell's written opinion that the bags found in the automobile contained marijuana. The evidence shows that Dr. McConnell conducted the tests on several of the bags personally and that he supervised the tests on the other bags made by his assistants. We have examined this contention and find it to be without merit.

Finally, the defendant contends error in the admitting in evidence of one bag of dry marijuana found in his automobile. The trial court, at the preliminary suppression hearing, had suppressed all of the evidence (that found in the apartment), except the six bags of "raw" marijuana found in the automobile. There were actually seven instead of six bags of "raw" marijuana found in the automobile. We find no error in this deviation from the suppression order because adequate foundation was laid for this additional bag along with all the others. In any event, it could not be asserted that such an error was prejudicial in nature.

For the reasons given, the judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

SPENCER, J., concurs in the result.