STATE OF NEBRASKA, APPELLEE, v. DOMENIC FRANKLIN ROMONTO, APPELLANT.

212 N. W. 2d 641

Filed December 7, 1973.   No. 39049.

Padley & Dudden, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., BOSLAUGH, and McCOWN, JJ., and TESAR and HAMILTON, District Judges.

TESAR, District Judge.

In a criminal proceeding for having possession of marijuana weighing more than one pound, the defendant moved to suppress the evidence that the state troopers, without a warrant, seized from the automobile defendant was operating. The court overruled his motion, and after trial, the jury found the defendant guilty as charged. On appeal, defendant's main thrust is the contention the court erred in its ruling in failing to sustain

the motion to suppress the evidence. We affirm the District Court's decision.

Officers of the Nebraska State Patrol, on May 13, 1972, were traveling west on Interstate Highway No. 80 in Keith County, when they met the defendant traveling east in his station wagon. Defendant was stopped because the officers thought the defendant did not have a license plate on the front of his vehicle. When the defendant's vehicle was stopped, it was discovered that the front end had been damaged and there was a winch which covered or shielded the license plate. There was, however, a license plate affixed but it was turned at an angle making it difficult to see. Upon being stopped, the defendant hurriedly removed himself from his vehicle and met the officer outside his vehicle. The officer, after checking the license plate, asked to see the driver's license of defendant, and the defendant produced an expired Ohio driver's license. When informed of said fact, he produced a valid Ohio license. He then produced from his person the registration certificate for the car, which was registered to one Brian McDonald, along with an affidavit from Brian McDonald, that defendant had his permission from May 9th to June 1st to drive the Toyota vehicle to Cleveland, Ohio. From his position outside the car, the officer noted cigarette papers on the dash of the car, and also noted that on the front seat in plain view, was a round piece of material, in ball form, that looked like rabbit dung, and which the officer, at the time, believed to be temple ball hashish. This ball ultimately turned out to be hashish.

The officer, after receiving the registration slip from the person of the defendant, instead of its being affixed in said car, was granted permission to examine the glove compartment. This he did, and about the same time he noticed a jacket lying on the seat with some suspicious bulges therein, and he asked permission and was granted consent to examine and search said jacket. The jacket was searched and two odd pipes were found, which had

been used for smoking marijuana. The odor of marijuana was very strong in the car, and it was at this point that the officer then placed the defendant under arrest, and he was given the Miranda warnings. In the meantime, another officer came up to the car and he found, sticking out from underneath the front seat of the driver's side, a matchbox, which he removed and found therein another small pipe, with a pipe bowl the approximate size to accommodate the hashish previously found in the car. He also detected a strong odor of marijuana. From his past experience as a highway trooper in smelling marijuana, he found the odor to be very strong. This officer then went back to where the defendant and the first officer were standing and asked the defendant if he had any marijuana in the car. The defendant answered in the negative. He then later stated, "Well, if I give you what I have, will you let me go?" With this, the officer asked the defendant to unlock the back door, which he did. There were many duffle bags in the car, and the officer took one out, unzipped it, and emanating therefrom was a strong odor of marijuana. He took out a single package and found it to be marijuana. A search of the vehicle disclosed over 135 kilos or approximately 300 pounds of marijuana. After the kilos of marijuana were discovered, the defendant voluntarily, after being asked if there was any other contraband in the car, told the officers, "I might as well be honest about it. There is some more by the transmission." He then directed the officers to the front seat and showed them where, under the floor mat near the transmission bulge area, there was a plastic bag containing marijuana and marijuana cigarettes.

The question presented therefore, was a warrantless search of the motor vehicle unreasonable and thus violative of defendant's constitutional rights?

We are confronted by a search of an automobile that can easily be moved, as distinguished from the search

of fixed structures. In State v. Forney, 182 Neb. 802, 157 N. W. 2d 403, we said: Probable cause for searching motor vehicles may not be treated the same as questions arising out of searches of fixed structures, like houses. See, also, Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777. One does not have to be blessed with charismatic powers to realize the wisdom of such a rule.

Our court has said numerous times that, in the evaluation of the reasonableness of a search and seizure without a warrant, it is imperative that the facts be judged against an objective standard, to-wit: The facts available to the officer at the moment of the search or seizure should warrant a man of reasonable caution to believe the action taken was appropriate. State v. Nichols, 189 Neb. 664, 204 N. W. 2d 376. The existence of probable cause must be determined by a factual and not by a technical standard. State v. Oltjenbruns, 187 Neb. 694, 193 N. W. 2d 744. What is a reasonable search is not to be determined by any fixed formula, but is to be resolved according to the facts of the particular case. State v. Smith, 184 Neb. 363, 167 N. W. 2d 568.

It is clear from the record that the officer observed cigarette papers on the dash, saw what turned out to be hashish in the car in plain sight, smelled the strong odor of marijuana emanating from the car, and saw the presence of a jacket with suspicious protrusions therein. It is the rule that objects falling within the plain view of an officer, who has the right to be in the position to have such view, does not constitute a search. State v. Smith, *supra*. In State v. Moore, 189 Neb. 380, 202 N. W. 2d 747, we said: "When materials in an automobile which are indicative of a criminal offense are in plain sight of an officer looking into the automobile from the outside, a search is justified and legal." There are a plethora of cases in our jurisdiction, to the same effect. State v. Rys, 186 Neb. 341, 183 N. W. 2d 253.

An officer is entitled to rely on his senses in determining whether contraband is present in a vehicle. If contraband is seen or smelled, the officer is not required to close his eyes or nostrils, walk away, and leave the contraband where he sees or smells it. State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129. Probable cause may result from the use of any of the senses. State v. Connor, 189 Neb. 269, 202 N. W. 2d 172.

We now turn our attention to the action of the officers in stopping defendant's vehicle. Defendant apparently is laboring under the misapprehension that the same rule of probable cause applies where a person is merely stopped and questioned, as when he is arrested. Defendant's approach presents a clash of interest between the protection of the public and the right of an individual. His premise is false and would cripple law enforcement. To require that an officer must have probable cause for arrest before he can stop and question a person would extend the Constitution beyond the realm of reasonable intendment. By so holding, we would be needlessly limiting police power for the mere sake of limitation. To do so would emasculate crime prevention and render peace officers impotent and useless. Individual rights on occasion must give way to the rights of society. This is the very purpose of law— to restrict the rights of the individual to provide protection for society. It is not possible to ignore the fact that police officers are charged with the duty to prevent crime as well as to detect it. Often an immediate inquiry is an indispensible attribute to the prevention and discovery of crime. This is particularly true where a moving vehicle is involved. Time is of the essence. State v. Carpenter, *supra;* State v. Harding, 184 Neb. 159, 165 N. W. 2d 723.

A prompt inquiry was in order and warranted, and the presence of probable cause to search, plus exigent circumstances, justified the search without a search warrant. It is only by alertness to proper occasions

for prompt inquiries and investigation that effective prevention of crime and enforcement of law is possible. Commendation, rather than condemnation, should be accorded to the officers for their detection of the commission of a very serious offense. This is not a case, as defendant tries to make out, of officers "coming with their star and their gun to force their way into the car." Nothing could be further from the truth of these assertions, for the officers' conduct at the scene of the arrest was of the highest standard of good officers and they evidenced same by their refusal to make a deal with the defendant for his release.

There is another reason the defendant's position is untenable in this proceeding, that is the defendant's consent to the search of the car's glove compartment and the jacket found in the car from which the pipes were removed, as well as his voluntary disclosure of other hidden contraband. In State v. Forney, 181 Neb. 757, 150 N. W. 2d 915, wherein this court dealt directly with the question of suppression of evidence, we said: "There is no illegal search and seizure of objects found in defendant's automobile, *even if defendant was not under arrest*, and even if the officers did not have a search warrant, if the defendant freely and intelligently gave his consent to the officers making the search." (Emphasis supplied.) Affirmative consent may be established by acts entirely aside from the use of words.

The same evidence that sustained the finding of guilt of the defendant amply supports the finding of the court that consent was freely and intelligently given.

In passing we might add that the evidence disclosed the exterior of the car to be very dirty, as if being on the road for a considerable period of time; affixed to the front and rear windows were decals indicating a visit to Mexico; statements were made by the defendant that the contents of the vehicle were his property, and that he had procured the marijuana in Mexico; likewise, a strong odor of patchouli oil emanated from

the body of the defendant, which the evidence disclosed as being one of the colognes to cover up the smell of marijuana; and further that the contraband was being transported back to the State of Ohio, where it was to be sold to students.

Accordingly, therefore, the trial court's decisions (1) in refusing to sustain defendant's motion to suppress the seized evidence; (2) in permitting the same to be received in evidence over defendant's objections, and (3) in refusing to give defendant's tendered instruction which stated in effect "that a search, preceding an arrest was unlawful," were all correct.

The actions of the officers in searching defendant's automobile without a search warrant satisfied constitutional requirement of probable cause.

The trial court in safeguarding the constitutional rights of the defendant, and acting on a matter which was discretionary with the court, allowed an inspection, at the insistence of the defendant, of defendant's car. The officer was likewise required to place into the car various exhibits which had been introduced in the trial and to place them in the position that he claimed he saw them prior to the arrest. After being so placed, the court allowed the jury to retrace the trooper's steps, as they walked by the car, and allowed them to make observations into the car to ascertain what could be seen and to determine whether the evidence was in plain sight and observable. In doing so, the trial court did not forget that the primary objective of any trial is to search out the truth.

The verdict of the jury, we think, amply verifies the truth of the officer's statements.

AFFIRMED.

McCown, J., concurs in the result only.