STATE OF NEBRASKA, APPELLEE, V. DANIEL SHEPARDSON, APPELLANT.

235 N. W. 2d 218

Filed November 6, 1975. No. 39929.

Bruce A. Pauley, for appellant.

Paul L. Douglas, Attorney General, and Chauncey C. Sheldon, for appellee.

674

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and KUNS, Retired District Judge.

WHITE, C. J.

The defendant was charged with possession of a controlled substance, LSD. The defendant pled not guilty. Prior to his trial, the defendant moved to suppress evidence obtained from him during a search of his vehicle. After a hearing, the defendant's motion was overruled. The case was tried to the court which found the defendant guilty and sentenced him to 2 years probation. The defendant appeals his conviction, alleging as errors the overruling of his motion to suppress, the failure of the court in not directing a verdict of not guilty at the close of the State's case, and the overruling of his motion for a new trial. We affirm the judgment of the District Court.

The defendant was operating a motor vehicle, a red van pulling a U-Haul trailer, during the afternoon of December 30, 1973, proceeding in an easterly direction on Interstate 80, in Keith County, Nebraska. Trooper Hollis Compton of the Nebraska State Patrol was proceeding in a westerly direction on Interstate 80, in his patrol car and in official uniform. The defendant and his vehicle attracted the attention of Officer Compton. Trooper Compton testified that the defendant "just didn't look like he belonged in the vehicle." Officer Compton turned his vehicle around, intending to stop the defendant for the purpose of checking his driver's license and vehicle registration papers. It was not necessary for Officer Compton to stop the defendant because when he caught up to the defendant he found the defendant already stopped at a service station at the Ogallala exit.

Officer Compton pulled his vehicle into the service station where the defendant was stopped and asked the defendant if he could see his driver's license, vehicle registration, and U-Haul trailer rental agreement. After

checking the license and the rental agreement, Officer Compton proceeded to check the vehicle information number (v.i.n.) against the vehicle registration. While examining the v.i.n. plate, Compton noticed numerous seeds on the threshold of the door of the van and in front of the driver's seat, which he believed to be marijuana seeds.

Officer Compton then asked the defendant if he had any marijuana seeds in his vehicle. The defendant replied "no." Compton asked the defendant if he knew what marijuana seeds looked like, showing him some of the seeds he had found. The defendant did not reply. Compton then asked what was in the trailer, to which the defendant replied "nothing." Compton asked if he could look. The defendant and Officer Compton walked to the rear of the trailer, where the defendant removed a coat hanger which was twisted through the hook of the lock of the trailer to secure it. The defendant opened the door for Officer Compton who then searched the trailer, finding nothing.

The two walked back to the door on the driver's side of the van. Again Officer Compton asked the defendant if he had any marijuana. This time the defendant reached into the van and pulled out a plastic bag from between the driver's and the passenger's seat and gave it to Compton. The bag contained a green, leafy substance believed by Compton to be marijuana.

At this point Officer Compton placed the defendant under arrest and read to him the Miranda warnings. When this was done, Officer Compton searched the van, finding a green ceramic smoking pipe, and a metal canister of the type usually used to hold camera film. Inside the canister was a substance which Officer Compton believed to be LSD.

The defendant's primary contention on appeal is that the actions of Officer Compton subjected him to an unreasonable search and seizure in violation of his Fourth

Amendment constitutional rights. We find no such violation.

State v. Holmberg, *ante* p. 337, 231 N. W. 2d 672 (1975), involved an almost identical situation. In that case the *sole* reason for initially stopping the defendant was to check his operator's license, vehicle registration, and vehicle information number. The court held this was sufficient justification for the initial stop: "As the trial court found, the only reason for the stop was to check the operator's license of the defendant, the motor vehicle registration, and its identification number. This is permissible under our law. No constitutional violation was involved." Under section 60-435(4), R. R. S. 1943, Officer Compton had the right to temporarily stop the defendant. That section provides that: "* * * all members of the Nebraska State Patrol * * * shall have the power * * * (4) when in uniform, to require the driver thereof to stop and exhibit his operator's license and registration card issued for the vehicle and submit to an inspection of such vehicle, the registration plates and registration card thereon * * *."

Officer Compton testified that the defendant "didn't seem to fit his vehicle." The thought occurred to Officer Compton that the vehicle might be stolen. This, together with the authority given Officer Compton under section 60-435(4), R. R. S. 1943, to make "random" and "spot" checks for proper vehicle and registration papers, was sufficient justification for Officer Compton to approach the defendant's vehicle, which was already stopped at a service station, and to make the initial inquiries that he did. This court has recognized that the rule for probable cause when a person is merely stopped and questioned is not the same as when a person is arrested. State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129 (1967).

In State v. Holmberg, *supra*, the court cautioned: "We are not unmindful of the possibility of abuse of the statute as we interpret it. We have no hesitancy in

saying that if the facts should disclose that the stop is a mere pretext for other reasons, it would be held to be arbitrary and unreasonable and violative of the Fourth Amendment. We hasten to state, specifically and emphatically, that a spot check is not to be used as a pretext to search for evidence of some possible crime unrelated to the requirements of section 60-435, R. R. S. 1943. We further hold that when the driver has produced his licenses and they are in proper form, he must be promptly allowed to continue on his way. It is only when, as here, the officer becomes aware of a reasonable probability of a law violation that the driver may be detained for further questioning."

There is no evidence in the record that Officer Compton was not acting in good faith or using his powers under section 60-435, R. R. S. 1943, as a pretext to search the defendant's vehicle. Mere allegations that the officer was using his authority as a pretext for a general search will not lead this court to label the stopping of a motor vehicle by a law enforcement officer arbitrary and unreasonable. When Officer Compton approached the defendant he proceeded to check his license and vehicle registration. Only while checking the v.i.n., when he spotted what he believed to be marijuana seeds, did Officer Compton begin to make other inquiries of the defendant. Compton testified that after the license and registration check, the defendant could have asked for and received his license and registration papers back and would have been allowed to drive off. As Officer Compton was checking the v.i.n. plate he noticed what he believed to be marijuana seeds in the defendant's van. He had a right to be in the position he was when he made the observation. The seeds were in plain view from that position. State v. Dillwood, 183 Neb. 360, 160 N. W. 2d 195 (1968). Having thus observed the seeds, Officer Compton became aware of the reasonable probability of a law violation and could de-

tain the defendant for further questioning. State v. Holmberg, *supra*.

After he observed the seeds the defendant was asked by Officer Compton if he had any marijuana. He said he did not. Compton showed him some of the seeds and asked him if he knew what marijuana seeds looked like. The defendant did not reply. Compton with the defendant's consent and cooperation then searched the U-Haul trailer. The defendant testified that he cooperated with Officer Compton because he felt Compton would search anyway. A similar contention was raised by the defendant and rejected by the court in State v. Forney, 181 Neb. 757, 150 N. W. 2d 915 (1967). The court wrote: "Defendant does not deny he gave consent to the search. He merely implies he did so because he felt it would do no good to object. Even if this is not a mere afterthought, it is not of itself sufficient to indicate coercion under the circumstances in light of the defendant's background and experience. The defendant does not even suggest that he was threatened or intimidated in any manner, and, as previously noted, contact with police officers was not a new experience for him. However, there is much more than mere acquiescence in the defendant's conduct herein. Affirmative consent may be established by acts entirely aside from the use of words. People v. Guyette, 41 Cal. Rptr. 875, 231 Cal. App. 2d 460. On three different occasions the defendant gave his consent and additionally he opened his automobile trunk for inspection."

After he had searched the U-Haul, Officer Compton again asked the defendant if he had any marijuana. This time the defendant voluntarily produced and surrendered a plastic bag which Officer Compton believed contained marijuana. It was at this point that the defendant was arrested and advised of his Miranda rights.

The defendant contends that he should have been given his Miranda warnings at the time Officer Compton first noticed the seeds. In Miranda v. Arizona, 384 U. S.

436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the court held: "Our decision is not intended to hamper the traditional function of police officers in investigating crimes. * * * General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present."

In Lowe v. United States, 407 F. 2d 1391 (9th Cir., 1969), a deputy sheriff in Arizona stopped a car which had been traveling in an erratic manner. After the car was stopped the deputy proceeded to ask numerous questions of the defendant. The defendant was thereafter arrested. A motion was made to suppress the statements made to the deputy on the ground that the defendant had not been given his Miranda warnings prior to this questioning. The Ninth Circuit upheld the overruling of the motion to suppress and affirmed the defendant's conviction. The court held: "The questions asked by Deputy Dunham at the shoulder of Route 66 in the presence of a passenger certainly do not create a 'compelling atmosphere.' When a law enforcement officer stops a car and asks the driver for identification, a vehicle registration slip, and upon receiving unsatisfactory answers further asks the driver's destination and business, no 'in custody' interrogation, as discussed in Miranda, takes place. This general on the scene questioning is a well accepted police practice; it is difficult to imagine the police warning every person they encounter of his Miranda rights. This is why the opinion in Miranda expressly excluded 'on-the-scene questioning' from the warning requirements. The statements made by appellant Lowe were a product of 'general on-the-scene questioning' which is not subject to the warning requirements of Miranda."

The questioning of a driver of a stopped car on an open highway by one policeman, without more, cannot be characterized as a "police dominated" situation or as "incommunicado" in nature. Lowe v. United States, *supra*.

In Arnold v. United States, 382 F. 2d 4 (9th Cir., 1967), it was held that questions, which relate directly to a suspected crime after the officer's suspicion has been aroused, may be permissible as on-the-scene inquiries.

In this case, Officer Compton's observation of what he believed to be marijuana seeds led him to suspect a crime. All questions up to the time that the defendant was actually arrested fall within the "on-the-scene questioning" exception to Miranda. No Miranda warnings were necessary until the defendant's actual arrest. Once the defendant was placed under arrest, Officer Compton promptly and properly delivered the Miranda warnings. The LSD, the possession of which the defendant was ultimately charged for, was discovered in the subsequent search incidental to the lawful arrest.

We conclude that the actions of Officer Compton did not deprive the defendant of any of his constitutional rights. This being the case, there was no error by the District Court in overruling the defendant's motion to suppress.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

I maintain the position set out in my dissent in State v. Holmberg, *ante* p. 337, 231 N. W. 2d 672.