State of Nebraska, Appellee, v. Darrell G. Nichols, Appellant.

204 N. W. 2d 376

Filed February 16, 1973.   No. 38595.

Noyes W. Rogers of Walter, Albert, Leininger & Grant, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold S. Salter, for appellee.

Heard before White, C. J., Spencer, Boslaugh, Smith, McCown, Newton, and Clinton, JJ.

Smith, J.

In a criminal prosecution for breaking and entering, defendant, Darrell G. Nichols, moved to suppress a radio that police officers without a warrant seized from an automobile. The court overruled the motion, and a jury found defendant guilty. On appeal he contends the court erred in the ruling.

Officer Robertson of the Nebraska State Patrol received radio information from another officer who had stopped the automobile at North Bend, Nebraska. He heard the description of the automobile, the names of the occupants, their records as known burglars, and that one of them, Noah McNamer, was a known drug offender. The men were considered armed and dangerous.

With the foregoing information Robertson on January

30, 1972, at 1 a.m. saw the automobile eastbound on U.S. Highway No. 30 at a point 5½ miles east of Columbus. Having followed it and radioed for assistance, he with the assistance of another officer stopped the automobile ¾ of a mile west of Schuyler, Nebraska. McNamer was the operator and Nichols was sitting opposite him.

Officer Williams, who was assisting Robertson, approached the right side of the automobile. Nichols, who was unaware of the presence of Williams, began to move around. Nichols' hands were not visible to Williams, so the latter opened the door and turned his flashlight on them. Nichols was holding a walnut-grain wooden case near his feet on the floorboards. Upon inquiry he said the case was a cassette player, and he lifted the object to the area of his lap. Williams observed a radio with a price tag that listed a price of $54.05 and Dier Supply, the seller. He knew that Columbus was the location of the seller. Nichols then stepped outside the automobile, voluntarily handed the radio to Williams, and at the suggestion of Williams walked back to a patrol car to expose the object to more light. Within 3 or 4 minutes Williams was informed by another officer that Dier Supply had been burglarized the evening of January 29th or the early morning of January 30th. Arrest, prosecution, and conviction of Nichols ensued.

In evaluation of the reasonableness of a search or seizure without warrant it is imperative that the facts be judged against an objective standard. Would the facts available to the officer at the moment of the search or the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate? Wherever an individual may harbor a reasonable expectation of privacy he ought to be free from unconstitutional governmental intrusion. Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). See, also, Adams v. Williams, 407 U. S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). The constitutional validity of a warrantless seizure can only be decided in the concrete factual

context of the individual case. See, Adams v. Williams, *supra;* Sibron v. New York, 392 U. S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968).

Officers Robertson and Williams geared their actions to the state of their knowledge. No unlawful interference with Nichols' right of privacy or freedom of movement occurred. The district court correctly overruled the motion to suppress the evidence.

AFFIRMED.

McCOWN, J., dissenting.

The objective standard for determining the reasonableness of a search or seizure without a warrant set out in the majority opinion comes directly from Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889. The words: "* * * would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" are followed immediately by the following statement: "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. * * * And simple ' " good faith on the part of the arresting officer is not enough." * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.' "

In this case, the prior stop of the automobile at North Bend, Nebraska, had identified the automobile, verified its description and registration; and revealed the names of the two occupants of the car and the driver's license. A radio check then revealed the criminal records of the two men. At the time officer Robertson later stopped the automobile again on U.S. Highway No. 30, there was no traffic violation or other suspicious conduct. He knew of no burglary or any other crime which might have been committed in the vicinity. He knew the

identity of the occupants of the automobile and that the registration and driver's license were in order. Officer Robertson admitted that the only reason the officers stopped the automobile was because the two occupants were known burglars.

Under these facts, the majority opinion holds that a "known" criminal may be stopped and "frisked" or "searched" at any time solely because he is a "known" criminal. At least as long ago as 1933, the Supreme Court held that criminal reputation standing alone cannot justify the issuance of a search warrant. See Nathanson v. United States, 290 U. S. 41, 54 S. Ct. 11, 78 L. Ed. 159. The fact that an individual is "known" to the police as a criminal does not destroy his constitutional right to be secure "against unreasonable searches and seizures" guaranteed by the Fourth Amendment.