STATE OF NEBRASKA, APPELLEE, v. WARFIELD GOINGS, APPELLANT.

165 N. W. 2d 366

Filed February 28, 1969. No. 37048.

E. A. Anderson, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and WILLIAM C. SMITH, JR., District Judge.

WILLIAM C. SMITH, JR., District Judge.

This is a criminal prosecution, charging the defendant with the offense of carrying a concealed weapon in Sheridan County, Nebraska. A gun and a box of shells taken from defendant were admitted in evidence. A jury found the defendant guilty and he was sentenced to 17 months in the Nebraska Penal and Correctional Complex. Defendant has appealed. He contends that no probable cause existed for the warrantless search, prior to defendant's arrest, and that hearsay evidence was admitted to establish probable cause for a search of the defendant. For these reasons, he says the district court should have suppressed the gun and box of shells from evidence.

The evidence of the State can be summarized as follows: M. J. Talbot, a state deputy sheriff was at his home in Rushville over the noon hour on February 17, 1968, when he received a telephone call from George Poshon, the county sheriff of Sheridan County, Nebraska, asking him to go to Whiteclay with him "on this concealed weapon."

Talbot and Poshon arrived in Whiteclay at about 1 p.m. As the two entered Stabler's Bar, the defendant left the bar. Inside the bar, the officers had a conversation with a Mr. Stabler, the proprietor of the bar. He advised the officers that the defendant was carrying a concealed weapon. Talbot had known Mr. Stabler for more than 15 years and had previously obtained reliable

information from him concerning criminal activities. Talbot did not know the defendant prior to this time.

At the time the officers left the Stabler Bar, the defendant was across the street talking to a party. The defendant then walked to the Norman Bar and entered it. The officers drove Poshon's automobile and parked across the street from the Norman Bar. The defendant came out of the Norman Bar and proceeded to walk north, toward the Stabler Bar. The officers observed the defendant pull up his right pant deg, put an object into his boot, and then pull his pant leg down over the boot. Talbot inferred the object placed in the right boot was metalic as the sun glistened on the object. Talbot was some 60 feet from defendant and had him under observation all the time. The defendant walked with a limp after placing the object in his boot but walked normal prior to that time. The officers drove up beside the defendant, stopped, advised him that they had information that he was carrying a concealed weapon, and asked him to place his hands on the police car. Talbot pulled up the defendant's right pant leg and removed a .22 caliber revolver. Talbot then advised the defendant that he was under arrest for carrying a concealed weapon.

Defendant urges two assignments of error: First, the court erred in overruling the defendant's motion to suppress the evidence taken from the person of the defendant; and second, the court erred in admitting hearsay evidence to establish probable cause for a search of the defendant prior to his arrest. A proper motion to suppress was made by the defendant, hearing had thereon by the court, and that motion was overruled. Subsequently on the trial of the case the exhibits were introduced in evidence.

According to the evidence adduced by the State on hearing of motion to suppress, the officers had been informed by a Mr. Stabler, who was known to be a reliable informant, of the concealed weapon carried by the defendant. This information was first by telephone and

then later given officers at Whiteclay by the informant. The defendant was identified to the officers. The officers observed the defendant go to the Norman Bar, and while in their automobile, observed defendant leave the Norman Bar and proceed up the street north. They observed defendant pull up his right pant leg and put an object into his right boot that they inferred was metallic as the sun glistened on the object. The officers drove up beside the defendant, stopped and advised him that they had information he was carrying a concealed weapon, and asked him to place his hands on the police car. Talbot pulled up defendant's right pant leg and removed a .22 caliber revolver. Defendant was then advised by Talbot he was under arrest for carrying a concealed weapon, which was identified at the hearing and later at the trial as exhibit 1. Exhibit 2 was a box of shells taken from defendant's left pants pocket after arrest and was introduced at the trial.

The officers had information from an informant, whom they considered reliable, of defendant's illegal activity and the arresting officer saw defendant put a metalic object in his boot that the sun glistened on. The circumstances were sufficient to convince a person of reasonable caution that an offense was being committed and to justify defendant's arrest. An arrest based upon probable cause derived from facts and circumstances within an officer's knowledge or of which he has reasonable trustworthy information sufficient to warrant a man of reasonable caution in believing an offense has been, or is, being committed, may be made without a warrant. See, State v. Perez, 182 Neb. 680, 157 N. W. 2d 162; State v. Cook, 182 Neb. 684, 157 N. W. 2d 151; State v. Watson, 182 Neb. 692, 157 N. W. 2d 156. A search and seizure incident to a lawful arrest is not violative of the Fourth Amendment. See, Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Reed v. United States, 364 F. 2d 630 (9th Cir.); United States v. Tucker, 380 F. 2d 206 (2d Cir.).

There was probable cause for the arrest in this case prior to the detention and the detention was legal under section 29-829, R. S. Supp., 1967. Therefore the information secured as the result of the legal detention further established probable cause for the arrest. Each case must be decided on its own facts and circumstances in order to determine the existence of probable cause. The evidence in this case overwhelmingly establishes probable cause for defendant's arrest. State v. Huffman, 181 Neb. 356, 148 N. W. 2d 321; State v Carpenter, 181 Neb. 639, 150 N. W. 2d 129.

The facts in the present case are stronger than those in State v. Carpenter, *supra*. In that case the court said as follows: "The existence of probable cause must be determined by a practical and not by any technical standard."

In the present case, the officers had the information from the informer and also their own observation of the defendant and, in the light of all this, had probable cause to think that the defendant was committing a crime, that of carrying a concealed weapon.

An arrest is a wholly different kind of intrusion upon an individual freedom from a limited search for weapons, and the interest each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prosecution.

Informal detention is permissible in spite of a lack of probable cause for custody in the tradition of arrest. See, § 29-829, R. S. Supp., 1967; State v. Huffman, *supra*. The interference with defendant's freedom of movement was lawful, and the officers geared their actions to the state of their knowledge. The search was reasonable under the facts in the instant case and the officers had probable cause for an arrest which makes the case much stronger than State v. Huffman, *supra*.

The defendant further contends that the information provided to the law enforcement officers by Mr. Stabler was hearsay, and therefore could not be considered

in support of the search and subsequent arrest without a warrant. The statements were not hearsay from a judicial point of view. They were admitted to determine not the truth of the statements, but whether or not the statements were made. In the present situation, the statements from the informer do not constitute part of the proof of the defendant's guilt. This testimony of the officers involved is relevant to establish that the informer did in fact make the statements and, therefore, to establish that their actions based on the statements were reasonable. The general rule in this situation is stated in 22A C. J. S., Criminal Law, § 718, p. 998, as follows: "Generally, the hearsay rule excludes extra-judicial utterances when, and only when, offered as evidence of the truth of the matter asserted; it does not operate to exclude evidence of a statement, request or message offered for the mere purpose of proving the fact that the statmeent, request, or message was made or delivered, where such occurrence establishes a fact in issue or circumstantially bears on such a fact. In other words, if an utterance can be used as circumstantial evidence, the hearsay rule is not applicable, and testimony that certain information was given the witness may be admissible as original evidence although the information itself would be objectionable as hearsay."

In 29 Am. Jur. 2d, Evidence, § 497, p. 555, it is stated: "Where the mere fact that a statement was made or a conversation was had is independently relevant, regardless of its truth or falsity, such evidence is admissible as a verbal act."

In Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327, the use of hearsay evidence in support of "warrantless arrests" is discussed as follows: "Information given by an informer to a government agent leading to arrest of defendant for violation of federal narcotics laws, even though hearsay, and even though not legally competent evidence in a criminal trial, could be considered in determining whether government agent had

probable cause, and reasonable grounds to arrest defendant without a warrant."

In cases involving the application for search warrants, hearsay has been held proper to form part of the basis for the issuance of such warrants. The court said in United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684, as follows: "While a warrant may issue only upon a finding of 'probable cause,' this Court has long held that 'the term "probable cause" * * * means less than evidence which would justify condemnation,' Locke v. United States, 7 Cranch 339, 348, and that a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial. Draper v. United States, 358 U. S. 307, 311. As the Court stated in Brinegar v. United States, 338 U. S. 160, 173, 'There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.' Thus hearsay may be the basis for issuance of the warrant 'so long as there [is] a substantial basis for crediting the hearsay.' Jones v. United States, supra, at 272. And, in Aguilar we recognized that 'an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved 'whose identity need not be disclosed * * * was "credible" or his information "reliable." ' Aguilar v. Texas, supra, at 114."

We conclude that the search without a warrant based on hearsay evidence and observations of the officers was legal as well as was the subsequent arrest. The revolver and box of shells were properly admitted in evidence.

The motion to suppress the evidence was properly overruled by the trial court.

For reasons stated, the judgment herein is affirmed.

AFFIRMED.