No. 12420

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

GLEN FETTERS and STEVE LEAN,

Defendants and Respondents.

Appeal from: District Court of the Second Judicial District,
Honorable John B. McClernan, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
Lawrence Stimatz, County Attorney, Butte, Montana.
Brian Tierney argued, Butte, Montana.

For Respondents:

Connors and Brolin, Anaconda, Montana.
Joseph C. Connors argued, Anaconda, Montana.
William Brolin argued, Anaconda, Montana.

Submitted: April 25, 1973

Decided: MAY 15 1973

Filed: MAY 15 1973

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal by the State of Montana from an order of the district court of Silver Bow County granting defendants' motion to suppress evidence in a criminal case.

Two defendants, Steve Lean and Allen Fetters, were charged in that court by Information in four counts: interference with railroad property; interference with railroad property causing death; murder; and malicious destruction of property.

The charges were based upon the affidavit of the county attorney of Silver Bow County which stated in part:

"On March 28, 1972, at approximately 8:30 o'clock P.M., a runaway switch engine from the Butte Concentrator, property of The Anaconda Company, smashed into the rear of a Butte, Anaconda & Pacific Railway ore train in the Rocker Yards, approximately six miles west of the Concentrator which is located in East Butte. Two Butte, Anaconda & Pacific employees, namely, Jack Weist and Vern Johnson were on the ore train at that time. Mr. Weist was killed instantly by the crash and Mr. Johnson suffered a broken leg when being thrown from the caboose which was shattered by the collision.

"At approximately 8:00 P.M. on March 28, 1972, one Jim Hodges, engineer on the switch engine, and the three crewmen set the brakes, pulled the power and reverse lever was disengaged and laid upon the top of the control box in the Concentrator Yard. The group went to eat their lunch and the facts indicate the engine was coupled to three acid cars with full air connection to the cars. At approximately 8:05 P.M., the engine was seen leaving the Concentrator Yard and two men were spotted in the engine by one James Lawrence, an employee of the Concentrator.

"Two employees were dispatched from the Concentrator area to look for any signs of the engine that had just left and at approximately 8:10 P.M. a car driven by Defendant Alan Fetters and registered to the Defendant Alan Fetters was seen parked on the south side of the Concentrator on a side road. The car was positively identified as Fetters' from a check with registration through the City of Butte Police Department. The facts further substantiate that Steve Lean, the Co-Defendant herein, reported off work and Fetters did not show up for work on the afternoon shift. Both Defendants were familiar with and had driven the engine in question on numerous occasions as their employment required. Both Defendants were drinking in Butte taverns for approximately ten to twelve hours prior to the engine leaving the yard. The facts further show that at approximately 8:40 or 8:45, or thereabouts, the Cadillac car registered to Fetters was not at the same place when the employees returned from their search for the

engine. Witnesses will further substantiate that both Defendants came in to the Race Track Bar and ordered drinks and also requested 'salve' for Fetters who had apparently burned his body.

"The following day or so, Defendant Fetters was observed in the shower at the Concentrator with multiple bruises over his body.

"The Sheriff's Office was directed to arrest the Defendants in the early morning hours of March 29, 1972, by Lawrence G. Stimatz, County Attorney for Silver Bow County, without warrant. Shoes and clothing were taken from the Defendants upon their arrest and statements were taken from the Defendants at that time, after being advised of their rights. The shoes bore descriptive heel marks and these were matched by photograph and personal observation by the Sheriff's Deputies and by Security Officers for The Anaconda Company. The tracks were located across the Continental Drive roadway from where the Fetters car was located and went up the bank into the Concentrator and were tracked into the Concentrator area. Sawdust samples taken from the Concentrator switch engine were matched with those found on the clothing of Defendant Fetters."

After leave to file the Information was granted, defendants appeared at arraignment on August 14, 1972, and plead not guilty. The same day they filed a joint motion to dismiss and motion to suppress evidence. That motion was asserted on grounds of whether the officers had probable cause to arrest defendants and whether the existing circumstances required an immediate arrest. Judge James D. Freebourn ordered the motions set for hearing on September 8, 1972. Prior to that date, on August 24, a notice of intention to rely upon the defense of alibi was filed.

On September 8, 1972, the district court Register of Actions shows:

"This day, defendants motion to dismiss and suppress evidence came on regularly for hearing. Defendants represented by counsel as before, State of Montana also represented by counsel as before. Thereupon, arguments on the part of both parties having been heard and concluded the court grants defendants ten days to prepare a brief and State of Montana ten days to reply and defendant five days to reply thereafter. Thereupon, upon request of defendants counsel the case by the court temporarily postponed."

On the same day, the Register shows "Exhibits filed."

Thereafter, on October 20, 1972, Judge John B. McClernan made an order granting the motion to suppress all of the physical evidence and statements obtained from and after the arrests.

- 3 -

Notice of appeal by the State was filed that same day, on October 20, 1972.

Almost four months later, on February 13, 1973, defendants, respondents on appeal, filed a motion under section 95-2408(e), R.C.M. 1947, to enlarge the record on appeal. The affidavit of counsel supporting the motion recited that since the State's appeal complained of the order suppressing the evidence contending that there was a lack of a hearing or an improper hearing, the State's contentions were inaccurate and improper as to what took place at the hearing. The State's attorney was not given notice of the motion.

The following day, on February 14, 1973, Judge McClernan without a hearing made an "ORDER ENLARGING RECORD ON APPEAL", which stated:

"STATEMENT OF FACT   Pursuant to the above-named De-
fendants' Motion to Suppress Evidence filed herein,
this Court fixed the 8th day of September, 1972, as
the time for hearing this Motion.  As a result, this
Court announced at the time and place set, that it was
ready to proceed to hear the Defendants' Motion, apprising
both the Defendants and the Plaintiff that the Court
Reporter was unavailable at that time.  The necessity of
a reporter was disposed of with the common consent of
the Parties and both Parties thereupon announced their
readiness to proceed.  The Defendants being the Movants,
proceeded to offer in evidence what purported to be a
transcript with attachments of the preliminary hearing
in this matter.  The State of Montana being present in
the person and represented by J. Brian Tierney, Deputy
County Attorney, Silver Bow County, offered no objection
to the Defendants' offer of evidence and, in fact, con-
curred in the offer.  This Court thereupon received the
transcripts, with attachments, consisting of F.B.I. re-
ports, a statement by James Hodges, and a map drawn by
George Evans.  The Defendants thereupon rested in their
presentation of evidence.  This Court then gave the
opportunity to the State of Montana to present whatever
evidence, either oral or documentary, it desired.  However,
the State signified its intention to rely solely upon the
evidence offered by the Defendants and the matter was deemed
submitted, subject only to oral arguments and briefs from
the Parties.  The Court, after considering the transcript
with attachments as submitted by the Defendants, and argu-
ments and briefs of the Parties, did thereupon on the 20th
day of October, 1972, enter its Order finding for the De-
fendants and suppressing evidence as prayed for.  It is from
this Order that the State appeals, alleging that an improper
hearing was held upon which to base an Order to Suppress."

We note that no record was made, no reporter was present. We note too, that the district judge's "Statement of Fact" from

memory of the four month prior event indicates the State declined to offer evidence other than the record of the preliminary hearing and certain exhibits. In briefs and on oral argument, counsel for the State insists that no hearing was held nor was the State allowed to introduce evidence.

Here we have a classic case where there is no record of what transpired /than the previously quoted Register of Actions' minute entry which on its face indicates that only oral arguments were made and exhibits filed.

On appeal the State argues as its sole issue that no "hearing" as contemplated by section 95-1806, R.C.M. 1947, was in fact held and the State is entitled to a proper hearing so that a record of the proceedings can be made. We agree.

While we do not reach the merits of the reasonableness of the arrest and search, it is apparent from a reading of the charges made, the affidavit in support of those charges, and the record of the preliminary hearing in justice court, that justice demands a proper legal hearing be had.

Section 95-1806, R.C.M. 1947, provides:

"Motion to suppress evidence illegally seized. (a) A defendant aggrieved by an unlawful search and seizure may move the court to suppress as evidence anything so obtained.

"(b) The motion shall be made before trial unless for good cause shown the court shall otherwise direct.

"(c) The defendant shall give at least ten (10) days' notice of such motion to the attorney prosecuting or such other time as the court may direct. The defendant shall serve a copy of the notice and motion upon the attorney prosecuting.

"(d) The motion shall be in writing and state facts showing wherein the search and seizure were unlawful.

"(e) If the allegations of the motion state facts which if true show that the search and seizure were unlawful the court shall conduct a hearing into the merits of the motion.

"(f) The burden of proving that the search and seizure were unlawful shall be on the defendant.

"(g) If the motion is granted the evidence shall not be admissible against the movant at any trial of the case."

That section contemplates a judicial hearing in a court of record where a record is made. Respondents argue that section 95-1806, R.C.M. 1947, does not require a record be made of the hearing contemplated. While the section does not say in so many words that a record be made, after all, it is a court of record. The only record made was that of the clerk of court in the heretofore quoted minute entry.

In State ex rel. Harrison v. District Court, 135 Mont. 365, 370, 340 P.2d 544, this Court in discussing a nunc pro tunc order correcting a previous order said:

> "But, nevertheless, a certain formality of proceedings is required by our laws."

The Court, in order that justice be done to correct a faulty proceeding, then went on to expunge from the record what it termed:

> "* * * the so-called findings of fact and conclusions of law * * *."

Since Harrison in 1959, the new Criminal Procedure Act has become effective. Section 95-2408, R.C.M. 1947, provides:

> "The record on appeal. (a) Composition of the Record on Appeal. The original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court shall constitute the record on appeal in all cases.
>
> "(b) * * *
>
> "(c) Statement of the Evidence or Proceedings When No Report was Made or When the Transcript is Unavailable. If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may, within ten (10) days from the hearing or trial or such time extended as the district court may for good cause shown permit, prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the respondent, who may serve objections or propose amendments thereto within ten (10) days after service. Thereupon, the statement and any objections or proposed amendments shall be submitted for settlement and approval to the district judge who handled the proceedings, and as settled and approved shall be included by the clerk of the district court in the record on appeal. A judge may settle and approve such records after he ceases to be a judge. If such judge before the statement is settled and approved dies, is removed from office, becomes disqualified, is absent from the state, or refuses to settle and approve the statement, it shall be settled and approved in such manner as the supreme court may direct.

"(d) Agreed Statement as the Record on Appeal. In lieu of the record on appeal as defined in subsection (a) of this section, the parties may prepare and sign a statement of the case showing how the issues presented by the appeal arose and were decided in the district court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issue presented. If the statement conforms to the truth, it, together with such additions as the court may consider necessary fully to present the issues raised by the appeal, shall be approved by the district court and shall then be certified to the supreme court as the record on appeal and transmitted thereto by the clerk of the district court within the time provided by section 95-2409. Copies of the agreed statement may be filed as the appendix required by section 95-2418.

"(e) Correction or Modification of the Record. If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court, either before or after the record is transmitted to the supreme court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the supreme court."

In the instant case, respondents contend that since no record was made of the proceedings at the hearing, and since appellant intended to make an issue of the facts with regard to that hearing, appellant should have proceeded under subsection (c) or (d) of section 95-2408. Respondents further state they did not know appellant contended that no "hearing" as such was had until the State's brief was received. At that time respondents proceeded under subsection (e), section 95-2408, claiming that appellant misstated the record. However, under subsection (a), section 95-2408, appellant had before it the docket entries of the clerk, heretofore quoted. Appellant had not misstated that record.

The motion to enlarge the record on appeal was made on February 13. The judge, without notice or hearing, made his order the following day. Thus we have a dispute which could and would have been resolved by a record. The trial court did not make any attempt to harmonize his recollection with the clerk of court's records nor with counsel for the State. That misunderstanding could occur is obvious.

One paramount fact stands out. In view of the serious charges and the evidence in the preliminary hearing, a full hearing with a record made is required in the interest of justice. What we said in <u>Harrison</u> is still pertinent:

> "* * * nevertheless, a certain formality of proceedings is required by our laws."

Accordingly, we set aside the order of February 14, 1973; vacate the order suppressing the evidence entered on October 20, 1972; and, remand the proceedings to the district court for a judicial hearing on the motions heretofore discussed.

IT IS SO ORDERED.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.