PEOPLE v DUNN

1. CRIMINAL LAW—RECORD ON APPEAL—SUPPRESSION HEARING—MISS-
   ING TRANSCRIPT.
   A defendant is not entitled to a reversal of his conviction purely
   on the ground of a missing transcript of a hearing on the
   suppression of evidence.

2. CRIMINAL LAW—RECORD ON APPEAL—SUPPRESSION HEARING—MISS-
   ING TRANSCRIPT—SETTLED RECORD.
   Remand of a case for the purpose of conducting a new hearing on
   a motion to suppress evidence is necessary where a transcript
   of a prior hearing is unavailable and a settled record of that
   hearing would not furnish the material necessary to determine
   whether the trial court abused its discretion at the pretrial
   hearing by denying defendant's motion to suppress the evi-
   dence.

Appeal from Genesee, Elza H. Papp, J. Submit-
ted Division 2 December 13, 1972, at Lansing.
(Docket No. 10074.) Decided November 28, 1973.

Robert L. Dunn was convicted of breaking and
entering an occupied dwelling with intent to com-
mit larceny. Defendant appeals. Remanded for a
new hearing on a motion to suppress evidence,
with instructions.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, *Donald A. Kuebler,* Chief,
Appellate Division, and *Joel B. Saxe,* Assistant
Prosecuting Attorney, for the people.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 4 Am Jur 2d, Appeal and Error §§ 268, 404.

*Carl H. Leiter,* for defendant.

Before: FITZGERALD, P. J., and McGREGOR and TARGONSKI,* JJ.

TARGONSKI, J. The disposition of this appeal which is mandated by the facts and circumstances which developed in the court below at first blush would appear to hardly justify the lengthy opinion which will be required since in order to logically develop our conclusion it is necessary that all of the attendant facts and circumstances be recited as a preliminary to our conclusion.

Defendant appeals as of right from his jury conviction of breaking and entering an occupied dwelling with intent to commit larceny therein, MCLA 750.110; MSA 28.305, and from his sentence of 7-1/2 to 15 years in prison as imposed pursuant to such conviction. A complaint and warrant were issued November 24, 1969, alleging that on the preceding day defendant broke and entered the residence of Rosa Kemp at 615 Lippincott Street in Flint, Michigan, with intent to commit a larceny therein. Arraignment on preliminary examination followed and in turn the jury trial commenced on March 26, 1970.

At trial Mrs. Kemp testified that on the date in question she left her residence, locked it, went to church, and stayed there until she was summoned home by a telephone call from a neighbor. Upon returning home she observed that the door was standing wide open and had been tampered with. Further, she noticed that her table-model television set was missing. She identified a television set which police officers recovered the same day and marked as people's exhibit #1 during the trial as

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the set which had been taken from her home. She further testified that following the date in question the defendant talked with her and offered to pay any damages which her television set might have sustained during its absence from her home.

A neighbor, Mrs. Zella Ellis, testified that on the date in question she observed a man walk out of the Kemp residence with a television set in his hands. She could not, however, identify the defendant as the individual she had seen at that time nor could she state that people's exhibit #1 resembled the television set she observed being removed from the Kemp dwelling. Her husband testified to the same effect.

Bernard Alexander testified that on the day of the alleged crime he observed the defendant, with whom he was acquainted, carrying a television set in his hands while walking down the sidewalk approximately one block from the Kemp residence. He further testified that shortly thereafter he visited with Mrs. Kemp, learned her television set had been stolen, and related to her that he had seen the defendant walking down the street with a television set shortly before.

Another witness, Booker Calvin, who at the time lived about two blocks from the Kemp home, testified that shortly after noon on the date of the alleged crime police officers visited his residence seeking the defendant. He further stated that these officers entered his house, observed the television set and, upon being told by the witness that the set was not his and that the officers were free to take it, they took the set with them. Flint Police Officer Robert Tryor testified that he and his partner went to the Calvin residence on a tip from a witness who had seen a man carrying a television set and believed that this man lived at the

Calvin address. This officer claimed that Mr. Calvin denied knowing the defendant, invited police officers into his home, and denied owning or even having previously seen the television set in question. This officer then identified people's exhibit #1 as the television set which he had removed from Mr. Calvin's home. He also described certain pry marks which indicated that someone had forced entry into Mrs. Kemp's residence. This officer's police partner corroborated Officer Tryor's testimony.

Flint Detective Sergeant Jess Kenniman stated on the witness stand that after the defendant had been arrested and informed of his *Miranda*[1] rights, the defendant informed him that he had purchased the television set from two unidentified men for $25. The statement continued that he placed the set inside the Calvin residence, and only later learned that the television set had been stolen from Mrs. Kemp and that police officers had visited the Calvin home and removed the set therefrom.

Defendant took the stand in his own defense upon the conclusion of the people's case. He reiterated the story which he had previously told to the police officers as set forth in the statement above. In the course of his testimony defendant admitted to a prior conviction for unarmed robbery.

The defendant in his appeal of right raises two claims of alleged error. We do not and need not consider the second issue since it has been disposed of in recent pronouncements from the Supreme Court. The first question, however, merits discussion and consideration. Where the court reporter did not furnish a transcript of an eviden-

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

tiary hearing at which the trial judge denied defendant's motion to suppress a stolen television set, should the case be remanded to the trial court for a second evidentiary hearing on the matter?

Trial counsel properly moved in behalf of the defendant to suppress the stolen television set so that it would not be admitted as an exhibit at the trial. His claim for justification of such motion was that the police had seized the set without a warrant and without the permission of the homeowner upon whose premises it was found. A journal entry in the trial court indicates that a hearing on the defendant's motion to suppress was held on March 9, 1970, and the record also contains an order of the trial court denying said motion. In his affidavit appended to the defendant's appeal brief, his appointed appellate counsel checked with trial counsel and was informed by the latter that "there were actual pretrial proceedings had on March 9, 1970, at which time testimony was presented and arguments were made in support of defendant's pretrial motion for suppression of evidence at the trial". Upon searching for a copy of the evidentiary hearing transcript in order to perfect the appeal, his appellate counsel avers that he was never able to secure such a transcript and upon checking with the court reporter in the trial court he was informed that she did not make stenographic notes for said proceedings.

The record in this case is replete with indications of repeated attempts by the prosecution to secure a copy of the missing transcript. On April 28, 1972, the prosecutor sent a certified letter to the reporter, Marie Holderness, requesting that she furnish a transcript of the March 9, 1970, suppression hearing. When this letter proved unproductive the prosecutor, on May 18, 1972, se-

cured a court order commanding the reporter to furnish a transcript of said proceedings by June 8, 1972. In the interim the people obtained from this Court an extension of time to file their brief until July 9, 1972, on the ground that the court reporter had failed to furnish the necessary transcript. June 27, 1972, the people asked for and received a second extension to September 1, 1972, after informing this Court that the reporter had not yet filed the requisite transcript. Appellate counsel also engaged in fruitless efforts to obtain a copy of the missing transcript. Defendant's appellate brief contains a statement by his counsel that the court files do not in any way indicate the name of the court reporter that took the stenographic notes of the proceedings held in the trial court on March 9, 1970.

Defendant contends on this appeal that he is entitled to a new trial for the reason that the trial court committed reversible error in failing to suppress the evidence of the television set. He further contends that he is deprived from presenting evidence in support of his contention through no fault of his own despite timely steps on his part in the court below to preserve his rights on this issue. He further contends that the appellate court is unable to review the findings of the trial court with reference to the question of suppression of evidence for the reason that the record of the testimony upon which the trial court based its ruling cannot be presented through no fault of the defendant. He claims that this likewise entitles him to a new trial.

The prosecutor filed his brief in this matter just 13 days prior to the date set for oral arguments on the appeal. As a consequence this Court granted the defendant an extension subsequent to the oral

arguments in which to file a reply brief to the brief of the prosecutor. The defendant's reply brief was distributed to the members of this panel on March 19, 1973.

The prosecution in its brief objects to the defendant's claim of appeal and reversal based on a lack of transcript. It is the prosecution's position that the defendant, in accordance with GCR 1963, 812.2(b), which provides in part "where there is no stenographic record of the proceedings in the trial court, a settled record shall be filed in lieu thereof as provided in rule 705", must compromise by entering into an arrangement for a settled record in lieu of the transcript. For authority he cites *People v Gatewood,* 5 Mich App 470; 146 NW2d 844 (1966); *People v Bennett,* 20 Mich App 166; 173 NW2d 830 (1969); and *People v McDonald,* 29 Mich App 502; 185 NW2d 555 (1971).

The people maintain that they should not be compelled to go through the process of a new trial for the lack of a suppression hearing transcript where the court reporter has failed and refused to produce such transcript, and where defendant has not sought employment of the above cited court rules. They contend that under the facts of this case this Court should seek to compel the court reporter to produce the transcript through its contempt powers or in the alternative direct that the defendant follow the procedures available under GCR 1963, 812.2(b). Further, note is taken of the prosecutor's statement in a footnote of his brief that similar questions have arisen within the same circuit court in other cases.

This panel has mulled over this question at great length. We conclude that the defendant is not entitled to a reversal of his conviction purely on the ground of a missing transcript from the

suppression hearing. However, given the context of alleged abuse of discretion in denial of a motion to suppress evidence, a settled record in lieu of the transcript would not furnish the material necessary for this Court to determine whether such an abuse occurred. The facts of this case can be distinguished from those in the cases cited in the prosecutor's brief.

Fairness to the defendant, the prosecution, and the trial court requires that this case be remanded to the trial court for the purpose of conducting a new suppression hearing. If the new suppression hearing develops into an order suppressing the evidence, then the cause should be dismissed. But if the new hearing leads the trial court to the conclusion that the motion to suppress should be denied, then an appeal may be made to this Court on the question of a determination of abuse of discretion in denying the suppression motion. Such appeal shall be predicated upon the transcript of the new suppression hearing.

Remanded with direction to proceed consistent with this opinion. This Court does not retain jurisdiction.

All concurred.