STATE OF NEBRASKA, APPELLEE, v. RICHARD POPE, APPELLANT.
STATE OF NEBRASKA, APPELLEE, v. EVELYN KILGORE, APPELLANT.
224 N. W. 2d 521

Filed December 26, 1974. Nos. 39394, 39395.

Frank B. Morrison, Sr., and Ivory Griggs, for appellants.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

The defendants herein were each charged in separate informations with two counts of possession of a controlled substance with the intent to deliver, count I in each information charging the respective defendant with the possession of heroin; and count II charging the possession of cocaine. The cases were thereafter consolidated for trial and each defendant was convicted on both counts. The defendants now appeal their convictions raising the several assignments of error hereinafter referred to. We modify and affirm.

The relevant events leading up to the charges filed against the defendants in these cases began at approximately 11:55 p.m., June 10, 1973, when Sergeant Charles Parker of the vice and narcotics unit of the Omaha police department began a surveillance of a house located at 2534 North Sixteenth Street in Omaha. The officer at that time was particularly interested in two cars parked behind that house, including a red Volkswagen. Prior to beginning the surveillance, Officer Parker had arranged to have three other police officers located in the vicinity of the intersection of Twenty-eighth and Bristol Streets in Omaha. At approximately 12:55 a.m., June 11, 1973, Officer Parker observed a Negro female

leaving the house at 2534 North Sixteenth Street. He testified that he saw her go to the rear of the house and that immediately thereafter he saw the red Volkswagen driven away. As Officer Parker followed the Volkswagen in his cruiser, he made radio contact with the officers located at Twenty-eighth and Bristol Streets and informed them that the suspect was proceeding toward their location. When the Volkswagen arrived at that location, it was stopped by the officers who had been waiting there and the woman driving the automobile was arrested. That woman was identified as the defendant, Evelyn Kilgore. A brief search of the purse of the defendant Kilgore was conducted at the scene. At that time it was discovered that the purse contained quantities of substances which were later identified as heroin and cocaine. While Officer Parker maintained custody of the defendant Kilgore, the other three officers proceeded to the house at 2534 North Sixteenth Street. Upon arriving there, they entered the house and discovered the defendant Richard Pope in the act of attempting to dispose of or destroy certain powdery substances which were later identified as heroin and cocaine. The defendant Pope was arrested at that time.

The defendants were thereafter charged with the offenses previously referred to. Motions were made by each of the defendants to suppress certain of the physical evidence seized at the time of their arrest. On July 17, 1973, hearing was held on those motions and the matter was taken under advisement by the court. Each of the motions was subsequently overruled.

We shall first consider the contention of the defendants that the District Court erred in overruling their motions to suppress, their claim being that the exhibits and other physical evidence received during the trial were the result of an unlawful search and seizure and therefore in violation of their constitutional rights. We

wish to point out, however, that the pretrial motions to suppress made by the defendants pursuant to section 29-822, R. R. S. 1943, were overruled by the court after a hearing. It is altogether possible that certain evidence and testimony were presented at that hearing which might be of assistance in disposing of defendants' claim. However, defendants failed to preserve in the record the evidence upon which the District Court based its decision to overrule the motions to suppress at the hearing set for that purpose.

It is the general rule that any assignment of error which requires an examination of evidence cannot prevail on appeal in the absence of a bill of exceptions. State v. Kortum, 176 Neb. 108, 125 N. W. 2d 196 (1963). We are faced with the issue of whether the State, in spite of the fact that it had apparently once sustained its burden of proving the legality of the searches in question, was nevertheless obligated at trial to prove again the legality of those searches. If the State had no such obligation, it would seem our consideration need only be addressed to the District Court's rulings on the motions to suppress.

We believe that the State, having once established the legality of police searches, is not again obligated, at trial, to prove that legality when introducing the evidence obtained through those searches. As was stated in the case of State v. Smith, 184 Neb. 363, 167 N. W. 2d 568 (1969): "It is clearly the intention of section 29-822, R. R. S. 1943, that motions to suppress evidence are to be ruled on and finally determined before trial * * * unless within the exceptions contained in the statute. * * * We conclude that section 29-822, R. R. S. 1943, intends, unless within the exceptions contained in the statute, that motions to suppress evidence should be finally determined before trial, but that the trial court is not precluded from correcting errors at the trial." Thus, although it is true that State v. Smith,

*supra,* does give the trial court the option to rule anew during trial on the question of the legality of a police search, it does not require the court to do so, the obvious reason being that such a requirement would completely undo the statutory scheme established by sections 29-822 and 29-824, R. R. S. 1943. We note that section 29-824, R. R. S. 1943, gives the State the right to appeal from an order sustaining a motion to suppress. If the State, after once prevailing on the motion to suppress, was again required to prove the legality of the search at trial, the State's right, under section 29-824, R. R. S. 1943, to bring appeal before jeopardy attached would be defeated in many cases. We are also impressed by that part of section 29-822, R. R. S. 1943, providing that unless a pretrial motion to suppress is made as provided therein, objections to the use of the property as evidence thereafter shall be deemed waived. It is clear to us that the purpose of that requirement is to avoid interference with the progress of the trial by freeing the trial court from the necessity of determining the collateral issue of the legality of the searches during the trial itself. See State v. Conner, 59 Idaho 695, 89 P. 2d 197 (1939), discussed in Annotation, 50 A. L. R. 2d 531 at 585. Obviously, that purpose would be defeated if, in every case, the State was obligated to prove the legality of police searches at the trial, as well as at the suppression hearing. We believe, therefore, that the trial court has the option, but not the obligation, to reconsider during trial the legality of police searches. It is, of course, true that evidence relating to the legality of police searches is relevant and admissible at trial, State v. Sharp, 184 Neb. 411, 168 N. W. 2d 267 (1969), but the mere fact that evidence obtained from such searches is objected to at trial does not mean that the State, having once established the admissibility of such evidence at the suppression hearing, is compelled to prove again during

trial that the searches were legal. The question of whether or not the State introduced sufficient evidence at trial to establish that the searches in question were legal does not seem to be controlling in this situation. It seems to us that what is controlling is whether or not there was sufficient evidence to establish such legality introduced at the hearing on the motions to suppress. However, as indicated above, we are prevented from making such a determination by the failure of the defendants to preserve the record of that hearing. We cannot know what evidence the State introduced at the suppression hearing to establish that the searches in question were legal. We do know that the District Court concluded that the State had sustained its burden of proving that legality.

In this case, the record reflects that in a hearing before the court during the trial out of the presence of the jury the defendants' renewed their objection to the offer in evidence of the exhibits in question on the ground that they were the result of an unlawful search and seizure and in violation of their constitutional rights. Notwithstanding what we have stated above, we shall consider the claims of the defendants in this regard, but must of necessity do so only upon the basis of evidence appearing in the record of the trial itself which we shall now review. It is undisputed in the record that when the police entered and searched the duplex located at 2534 North Sixteenth Street where much of the physical evidence was obtained, they had no warrant authorizing them to do so. The law is well settled, and we have recently held, that a search of a place of residence without a warrant is not justified under the Fourth Amendment to the Constitution of the United States except for probable cause and the existence of exigent circumstances or other recognized exception. State v. Patterson, *ante* p. 308, 220 N. W. 2d 235 (1974), a case factually similar to the instant cases.

We believe the following additional facts are fairly deducible from the record of the trial in these cases. Prior to the search in question, the police had received information from an informant that narcotics were going to be delivered at a residence at Twenty-eighth and Bristol Streets. And, they were also given information by the informant that the delivery would be made either in a red Volkswagen or a white Mustang automobile. Police officers were dispatched to the area of Twenty-eighth and Bristol Streets to await the arrival of the described vehicle. Sergeant Charles Parker, the supervisor of the other police officers, testified that at 11:55 p.m., on Sunday, June 10, 1973, he went to the duplex at 2534 North Sixteenth Street and found a white Ford Mustang and a red Volkswagen with Nebraska license 1-AA415 located behind the duplex. He thereupon went back and set up a surveillance on 2534 North Sixteenth Street. At approximately 12:55 a.m., five minutes to one in the morning, he saw a negro female leave the house. She had on a black blouse and a pair of long white pants. She went to the rear of the address she had left, entered the red Volkswagen with the license 1-AA415 and departed. He followed the automobile but made radio contact with the other officers stationed at Twenty-eighth and Bristol Streets, advising them that the car he had described to them earlier had left the residence and was enroute to their location. The lady driving the red Volkswagen referred to did appear at the Twenty-eighth and Bristol Streets area shortly thereafter and the police officers opened the car door, advised her that they were police officers, and requested she should step out. They observed a purse in her possession which they searched and found 15 small tinfoil packets of a powdery brown substance and also a small bag of powdery substance, which later proved to be heroin and cocaine. They then advised the party that she was under arrest. The evidence is

clear and undisputed that at that time she yelled quite loudly to some people across the street and to a lady and her husband who came out on a porch nearby "Call my husband. I am being arrested." We add, parenthetically, there is evidence in the record that the defendants either were husband and wife, or had been living together as husband and wife. At that time she also yelled out the telephone number "346-4411." Police officers further testified that they were familiar with the telephone number and that it was listed for 2534 North Sixteenth Street, the same house they had under surveillance and the same house the woman in the Volkswagen had just left. After a consultation between Sergeant Parker and the other police officers it was determined there would not be a chance to obtain a search warrant and Sergeant Parker thereupon advised the officers to go to 2534 North Sixteenth Street to gain entry and search the house. This the officers immediately did, entered the house, and apprehended the defendant Pope in the act of flushing certain drugs down the toilet, and also located in the duplex drugs and other physical evidence which was confiscated. The drugs later proved to be heroin and cocaine. There is also other evidence in the record to the effect that the defendant Kilgore was a narcotics addict and that the police knew that; and also that she owned and drove a red Volkswagen.

We believe the foregoing evidence established probable cause and the existence of exigent circumstances warranting the police officers to enter and search the duplex in question. In State v. Patterson, *supra,* we held that where the information in the possession of the officers leads to the conclusion that the place of residence is the scene where a felony is being committed and they have evidence which indicates this is the fact and where there is great likelihood that the evidence will be destroyed or removed before a war-

rant can be obtained, then exigent circumstances may be said to exist. We also conclude that under the circumstances there was probable cause for the arrest of the defendant Kilgore in her automobile at the time in question. We are also mindful of the rule set out in State v. Goings, 184 Neb. 81, 165 N. W. 2d 366 (1969), that information given by an informer to an officer leading to the search and subsequent arrest of the defendant for a violation of the carrying of a concealed weapon's law, *even though hearsay, and even though not legally competent evidence in a criminal trial,* can be considered in determining whether the officer had probable cause and reasonable grounds to search and subsequently arrest the defendant without a warrant. This court on many occasions has stated that the existence of probable cause must be determined by a practical, and not by any technical, standard. State v. Harding, 184 Neb. 159, 165 N. W. 2d 723 (1969); State v. Goings, *supra;* State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129 (1967). We are also mindful of the language of this court in State v. Harding, *supra:* "Police officers must be given reasonable latitude in judging whether probable cause exists. Unless their actions are based on an unwarranted belief that probable cause exists and are therefore unreasonable, their arrests and searches conform to constitutional guidelines. The right of an individual to be free from unwarranted intrusions on his person and property should be balanced against the need for effective law enforcement which can only exist where an officer's actions are measured objectively against a standard of reasonableness." We conclude that the action of the trial court in overruling the motions to suppress of the defendants was correct.

We now consider defendants' motions for severance. Objections to consolidation were made by the defendants "for the reason that it is inherently prejudicial

to the defendants and each of them to be tried at the same time." Those objections were treated as motions to sever by the District Court, which thereupon overruled the motions, and required the cases to be tried together. The cases were tried to a jury which returned verdicts of guilty against both defendants on both charges. Richard Pope was given consecutive sentences of 10 years on count I and 5 years on count II. Evelyn Kilgore was given concurrent indeterminate sentences of from 3 to 10 years.

On appeal, the defendants have assigned as error the action of the District Court in overruling their motions for severance. The matter of the consolidation of criminal prosecutions for the purpose of trial is controlled by section 29-2002, R. R. S. 1943. Section 29-2002(3), R. R. S. 1943, provides in part: "The court may order two or more indictments, informations, or complaints or any combination thereof, to be tried together if the offense, and the defendants, if there are more than one, could have been joined in a single indictment, information or complaint." Section 29-2002(2), R. R. S. 1943, provides in part: "Two or more defendants may be charged in the same indictment, information, or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Section 29-2002(4), R. R. S. 1943, provides: "If it appears that a defendant or the state would be prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires." It is clear from the statute set out above that the matter of the propriety of a joint trial of criminal

prosecutions involves basically two questions, that is, whether the *consolidation* was proper in that the defendants could have been joined in the same indictment, information, or complaint, and secondly, whether there was a right to *severance* because the defendants or the State would be prejudiced by an otherwise proper consolidation of the prosecutions for trial. Upon consideration, we have concluded that the joint trial in these cases was proper.

In the absence of a showing that the defendants involved would be prejudiced by the consolidation for trial of criminal prosecutions, such consolidation is proper where it could have been alleged that the defendants participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. State v. Shimp, 190 Neb. 137, 206 N. W. 2d 627 (1973). The defendants herein made no factual showing in the record before trial to indicate that the consolidation of these prosecutions would be prejudicial. Furthermore, the record affirmatively establishes that consolidation was proper. There is evidence in the record to indicate a common scheme or plan on the part of these two defendants to distribute drugs illegally. It is clear that the defendants could have been charged in the same information with having participated in the same transaction constituting the offenses charged. We conclude that the consolidation of the cases for trial was proper under section 29-2002, R. R. S. 1943.

It is true, of course, that even where criminal prosecutions are otherwise properly consolidated for the purpose of trial, the court may grant the defendants involved therein separate trials under section 29-2002(4), R. R. S. 1943, upon a showing that prejudice will result from a joint trial. State v. Brown, 174 Neb. 387, 118 N. W. 2d 328 (1962). The trial court herein obviously determined that no prejudice to the defendants would

result from the consolidation of these prosecutions for trial. The ruling of a trial court upon a motion for consolidation or severance of criminal prosecutions that were properly joinable in a single indictment, information, or complaint will not be disturbed on appeal in the absence of an abuse of discretion. State v. Bazer, 189 Neb. 711, 204 N. W. 2d 799 (1973); State v. Shimp, *supra*. Defendants do not point out in their brief anything to indicate that they were prejudiced by the consolidation in this case, and an independent review of the record by this court fails to disclose the existence of such prejudice. Under the circumstances we must conclude that the District Court did not abuse its discretion in overruling the defendant's motions for severance.

The defendants further allege that the District Court erred in not striking from the informations the multiple charges against them arising out of the same transaction. The defendants argue that trying them on those multiple charges had the effect of submitting them to double jeopardy in violation of their rights under the Constitution of the United States. In support of their argument, the defendants cite Ashe v. Swenson, 397 U. S. 436, 90 S. Ct. 1188, 25 L. Ed. 2d 469 (1970). That case involved an armed robbery of six poker players. The petitioner was charged with the robbery of one of the participants in the poker game, but was acquitted on that charge. Subsequently, the State brought the petitioner to trial on the charge of robbery of one of the other participants and he was convicted. The United States Supreme Court reversed the conviction, applying the doctrine of collateral estoppel to the second prosecution. We understand the theory of the Ashe case, but are convinced it does not apply here. As stated by the majority in the Ashe case: "The question is not whether (the State) could validly charge the petitioner with six separate offenses for the robbery

of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again." Thus, it is clear to us that Ashe v. Swenson, *supra,* is not controlling in this case.

The case that actually controls the outcome in the matter now before us is Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153 (1915). In that case, as here, the defendants had been charged with and convicted on two separate criminal counts. In that case, as here, the defendants contended that the "protection against double jeopardy set forth in the Fifth Amendment to the Constitution of the United States required their discharge, because the several things charged in the two counts were done at the same time and as a part of the same transaction." In the Morgan case, the United States Supreme Court held that double jeopardy was not present, stating that: "* * * the test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges relate to and grow out of one transaction does not make a single offense where two are defined by the statutes." In this connection, in defendants' brief they argue: "If Evelyn Kilgore and Richard Pope would have been acquitted of Count I could they be retried for Count II where the statute defines the offense in terms of 'possession of a controlled substance?' The offense is not heroin, cocaine, specifically but collectively, 'controlled substances.' " What defendants are, in effect, arguing is that charging them in separate counts with possession of heroin and cocaine is, in fact, charging them with the same offense. The same situation was involved in the case of Normandale v. United

States, 201 F. 2d 463 (1953). In that case the appellant Normandale was indicted on three counts charging violations of the federal narcotic laws, section 2553(a), Title 26 U. S. C. A. On motion of the government, the first count was dismissed; and the appellant entered a plea of guilty to the second count, which was for the unlawful purchase of heroin hydrochloride, and also a plea of guilty to the third count, which was for the unlawful purchase of raw opium. He was sentenced to serve 4 years on the second count, and to serve 18 months on the third count, the sentences to run consecutively. Appellant filed a motion to vacate the sentence with reference to count III under section 2255, Title 28 U. S. C. A., based on the contention that the narcotics designated by the second and third counts were purchased at the same time and constituted only one offense. The court overruled the motion. Appellant claimed this placed him in double jeopardy in violation of his rights under the Fifth Amendment. Section 2553(a), Title 26 U. S. C. A., of the Harrison Narcotics Act, provided that it should be unlawful to purchase, sell, dispense, or distribute opium, isonipecaine, coca leaves, opiate, or any compound, salt, derivative, or preparation thereof, except in or from the original stamped package. The court held that it was the intention of Congress in enacting the law to make it an offense to purchase each kind or type of narcotics so named. Actually section 2553(a) of Title 26 U. S. C. A., in effect at that time, provided: "It shall be unlawful for any person to purchase, sell, dispense or distribute any of the drugs mentioned in section 2550(a) except in the original stamped package or from the original stamped package; * * *." Section 2550(a), referred to therein provides that there shall be "levied, assessed, collected, and paid upon opium, isonipecaine, coca leaves, opiate, * * * (etc.), an internal revenue tax at the rate of 1 cent per ounce, * * *." The violation of

section 2553, Title 26 U. S. C. A., was made criminal and penalties were provided and set out in' section 2557 of Title 26 U. S. C. A. A comparison may be drawn and similarity noted between the arrangement of the Harrison Narcotics Act involved in the Normandale case and the Nebraska Uniform Controlled Substances Act involved in these cases. Section 28-4,125, R. S. Supp., 1973, is the section which sets out the prohibited acts and the penalties and prohibits the manufacture, distribution, delivery, dispensing, or possession, etc. of a "controlled substance." Section 28-4,117, R. S. Supp., 1972, enumerates and defines the various controlled substances, setting them out in Schedules I, II, III, IV, and V. While the Harrison Narcotics Act does not have multiple schedules, as does the Nebraska act, nevertheless they are similar in that the prohibition section adopts by reference the various controlled drugs. In any event, in Normandale, *supra*, the court concluded that it was the intention of Congress to make it an offense to purchase each kind or type of narcotics so named, notwithstanding the fact that they were all contained in one section, rather than separate schedules. In that case the court stated: "In determining if separate counts in an indictment constitute the same offense, the test to be applied is whether each provision requires proof of additional facts or evidence. Heroin hydrochloride and raw opium, although the former is a derivative of the latter, are entirely different drugs. The appellant could not have been convicted on each count by the same evidence, since proof of the purchase of heroin hydrochloride would not have satisfied the requirements of proof as to the purchase of the other, and vice versa. Therefore, the fact that the appellant purchased two kinds or quantities of narcotics at the same time and in the same transaction did not integrate the two offenses into one. The same course of conduct upon the same occasion may result in separate offenses

and be separately punished. Ebeling v. Morgan, 237 U. S. 625, 35 S. Ct. 710, 59 L. Ed. 1151; Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153; Walsh v. White, 8 Cir., 32 F. 2d 240, 241; Blockburger v. U. S., 7 Cir., 50 F. 2d 795; Haggerty v. U. S., 8 Cir., 52 F. 2d 11. See Gavieres v. U. S., 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489; Albrecht v. U. S., 273 U. S. 1, 11, 47 S. Ct. 250, 71 L. Ed. 505; U. S. v. Sharpe, D. C., 61 F. Supp. 237; Bacom v. Sullivan, 5 Cir., 200 F. 2d 70." See, also, Garcia v. Beto, 348 F. Supp. 884 (S. D. Tex., 1972).

We believe that the Legislature, in enacting sections 28-4,117, R. S. Supp., 1972, and section 28-4,125, R. S. Supp., 1973, intended to define two separate offenses for the possession of heroin and cocaine with the intent to distribute, deliver, or dispense. Furthermore, it is clear to us that in spite of the fact that the charges involved herein arise out of the same transaction, those charges may not be regarded as constituting an identical offense. Different evidence was required to sustain a conviction on each of the charges. It was entirely possible for either or both of the defendants to have been found not to be in the possession of heroin, for example, and still be found guilty of the possession of cocaine. We further point out that in the Nebraska act, the types of heroin and cocaine involved in these cases are listed in different schedules, and we further point out that in some instances different penalties are provided, depending upon the type of the controlled substance involved in the various schedules. This further supports our conclusion that our Legislature intended to provide for separate offenses for the various types of controlled substances under the facts involved in these cases, and not merely one offense.

Thus, under the circumstances, there was no identity of offenses and the defendants were not submitted to double jeopardy in the form of double punishment.

The defendants assign that the District Court erred in instructing the jury on the issue of aiding and abetting. Although the matter of the instruction was raised on appeal, an examination of the record shows that it was not raised in the defendants'. motions for new trial. In order to obtain a review of alleged errors occurring during the trial, such errors must be pointed out to the trial court in a motion for a new trial and a ruling obtained thereon. State v. Temple, *ante* p. 442, 222 N. W. 2d 356 (1974); State v. Stanosheck, 186 Neb. 17, 180 N. W. 2d 226 (1970). Assuming, but not conceding, that the error complained of existed, we cannot now consider it.

Other errors raised by the defendants have been considered and found to be without merit. However, we believe that there is one further matter which must be disposed of. It appears clear from a reading of the record with reference to the sentencing of the defendants, that the sentencing judge intended to impose upon the defendant Evelyn Kilgore a sentence that was less harsh than that which was imposed upon the defendant Richard Pope. In fact, even the defendant Richard Pope requested that this be done. As previously stated, however, defendant Pope was sentenced to a flat period of 10 years imprisonment on count I and a flat period of 5 years imprisonment on count II, with the further specific provision of the court that the sentence imposed on count II was to be consecutive to and not concurrent with the sentence imposed on count I.

On the other hand the defendant Evelyn Kilgore received indeterminate sentences of imprisonment of 3 to 10 years on both count I and count II, with the further specific provision of the court that the sentence imposed on count II was to be concurrent with and not consecutive to the sentence imposed on count I. It appears, therefore, that under the present stat-

ute, defendant Pope will be eligible for parole before the defendant Kilgore is, and therefore the sentence given to the defendant Kilgore is in a very significant respect, more harsh than the sentence given to the defendant Pope. See, §§ 83-1,110(1), 83-1,110(2), and 83-1,105, R. S. Supp., 1972; § 28-4,125, R. S. Supp., 1973. See, also, State v. Hedglin, *ante* p, 545, 222 N. W. 2d 829 (1974). The defendant Pope was sentenced to consecutive terms of 10 years and 5 years, but for each sentence the minimum sentence under section 83-1,105(2), R. S. Supp., 1972, would be 1 year. Under section 83-1,110(2), R. S. Supp., 1972, those terms would be added together, with the result that Pope would be eligible for parole after serving 2 years of his sentences. On the other hand defendant Kilgore, who was sentenced to two concurrent terms of from 3 to 10 years, would not be eligible for parole until 3 years have passed under section 83-1,110(1), R. S. Supp., 1972. Therefore although it appears that the sentencing judge intended to impose upon defendant Kilgore a sentence less harsh than that imposed upon Pope, the actual effect of the sentences was to make Pope eligible for parole in 2 years, while Kilgore will have to wait for 3 years before she will be eligible for parole. Therefore, upon a review of the record, we have determined that we should, under the authority contained in section 29-2308, R. R. S. 1943, modify the sentences of the defendant Evelyn Kilgore to impose upon her concurrent indeterminate sentences of imprisonment of from 2 to 10 years. In all other particulars, the judgments of the District Court are affirmed.

AFFIRMED AS MODIFIED.

CLINTON, J., concurs in the result only.

McCOWN, J., dissenting.

The majority opinion reaches the conclusion that objections to the introduction of evidence at a criminal trial, on the grounds that the evidence was obtained

by an unreasonable search and seizure, may be properly cverruled, although there is insufficient foundation in the record of the trial to establish the admissibility of the evidence. The justification is that a motion to suppress the evidence upon the same grounds was overruled at a pretrial hearing. The holding assumes that a record was made of the pretrial hearing although that fact does not appear. The majority opinion also places upon the defendant the burden of making the pretrial record a part of the record of the trial.

In State v. Smith, 184 Neb. 363, 167 N. W. 2d 568, this court held that the overruling of a motion to suppress under section 29-822, R. R. S. 1943, does not preclude objections to the introduction of evidence at the trial on the ground that it was obtained by an unreasonable search, nor does the overruling of such a pretrial motion to suppress constitute a waiver of the right to object to the introduction of the evidence at the trial. The problem then becomes one of determining who has the burden of establishing from the record of the trial either that the evidence was or was not obtained by an unreasonable search and seizure. It must be remembered too that the search here was a warrantless search, and that unless some of the evidence from the pretrial hearing on the motion to suppress is made a part of the record at trial, there was apparently a presumptively unreasonable search, if we go on the record alone. It must be noted too that the trial was conducted by a different judge than the one who conducted the pretrial hearing on the motion to suppress. It would have been a very simple matter for the State to have moved the trial court to take judicial notice of the evidence taken at the pretrial suppression hearing or make the evidence a part of the trial record if such evidence was reported. If it was not reported, there could be all sorts of difficulty in

laying the necessary foundation to establish that the warrantless search here was reasonable.

Courts have reached all sorts of results in cases like this. It is obvious that an appellate court is placed in an extremely difficult position when it must determine from the record of a trial whether or not an objection to the introduction of evidence was properly overruled when the foundation for the ruling does not appear in the evidence of the trial, and was not made a part of the evidence by anyone. Some courts have solved the issue as the majority opinion does, by presuming in the absence of a record that the issue was properly decided at the suppression hearing. See State v. Kelly, 99 Ariz. 136, 407 P. 2d 95. Other courts have ordered the record on their own motion. See, People v. Dunn, 50 Mich. App. 529, 213 N. W. 2d 832; State v. Fetters, 510 P. 2d 1 (Mont., 1973); State v. Michaels, 60 Wash. 2d 638, 374 P. 2d 989. Federal courts have reached varying results on the issue but have tended to take action on their own motion to secure the record of the pretrial hearing and make it a part of the record on appeal. For example, in Gatewood v. United States, 209 F. 2d 789 (1953), the court recognized the principle adopted by the majority opinion in this case that the party appealing must make sure the transcript is complete on an appeal. On its own motion the court sought the record on the ground that the pretrial hearing on the search and seizure issue was of vital significance to the appeal and was actually a part of the trial. In Turk v. United States, 429 F. 2d 1327 (8th Cir., 1970), the court stated that in the interest of justice the court, on its own motion, could order the record in order to review the issue of probable cause for the search. See, also, Washington v. United States, 401 F. 2d 915.

The Nebraska statutory scheme was not intended to reduce or increase the amount of foundation evidence

necessary to support the admission of evidence at a criminal trial over an objection on the ground that it was obtained by an unreasonable search and seizure. It was instead designed to expedite determination of such issues before trial and prevent surprise and delay at the time of trial. Although the burden rests on the prosecution to prove the defendant guilty beyond a reasonable doubt, and to prove that guilt by evidence properly admitted, the majority opinion here holds that the admission of evidence may be determined on the basis of something outside the trial record, and never admitted in evidence at trial. It also holds that if the defendant wants the ruling on an objection to admission of evidence at trial reviewed, he must not only bring up the full trial record, but he also must see to it that the evidence at a pretrial suppression hearing is included as a part of the bill of exceptions of the trial. In these cases the defendants requested "a complete Bill of Exceptions in the above-entitled cause including the trial, same to contain all evidence offered and received, for the purpose of a review of the conviction and sentence in said cause by the Supreme Court of the State of Nebraska." The reporter has certified that the bill of exceptions is "correct and complete" in accordance with the praecipe and our rules.

There ought to be a far more practical answer to the problems of appellate review of rulings made at a pretrial hearing on a motion to suppress. Wherever it becomes necessary, the court ought to obtain the record on its own motion in the interests of justice.

The majority opinion also holds that the separate charges against the two defendants here were properly consolidated for the purpose of trial, and that the joint trial fails to establish any possible prejudice. Section 29-2002(2), R. R. S. 1943, provides in part: "Two or more defendants may be charged in the same indictment, information, or complaint if they are alleged to

have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."

Subsection (3) of that section authorizes joint trials if the offense, and the defendants, if there are more than one, could have been joined in a single indictment, information, or complaint.

Here the defendant Pope was charged with two counts of possession of a controlled substance with intent to deliver. The acts and the crime with which he was charged occurred in a house at 2534 North 16th Street, Omaha, Nebraska, and he was the only one present. The defendant Kilgore was also charged with possession of controlled substances with intent to deliver. The acts and the crime with which she was charged occurred in an automobile near 28th and Bristol Streets in Omaha, Nebraska, and at an earlier time than the Pope crime. Kilgore was the only person in the automobile. There is no proof in the trial record that the two defendants in the two separate crimes are husband and wife, and in each case the individual defendant was the only person at the scene of the arrest and was in personal possession of the illegal substances. No constructive possession is involved. There was no charge or allegation that either of the two defendants was a principal or aider or abettor in the offenses charged against the other defendant, and the jury was specifically instructed that it must separately consider the guilt of each defendant and that evidence relating to one should not be considered against the other.

The Nebraska statute involving joinder is substantially similar to Rule 8(b) of the Federal Rules of Criminal Procedure. Two or more defendants may be jointly charged in the same indictment if both defendants participated in the same act or transaction constituting the offense or offenses charged. In interpreting the federal rule, courts have repeatedly held that

the trial court must first establish that the crimes for which the defendants are charged arose out of the same act or transaction. See, Ingram v. United States, 272 F. 2d 567; Bridgman v. United States, 183 F. 2d 750. See, also, Dove v. Superior Court, 39 Cal. App. 3d 960, 114 Cal. Rptr. 889. In that case, as in this one, illicit substances were involved. One sale was made on November 5th by the wife. A second sale was made by the husband on November 15th, both to the same undercover agent and both from the same residence. The State contended that a joint trial was permissible because the sales were made from the same location and the defendants were living together. The court held that joint trials were improper, stating: "The potential for prejudice to each defendant in this case lies in the very elements on which the People rely: that defendants are married and living together and that the sales were made from the same residence. The vice inherent in joining defendants in this situation lies in the danger of a conviction based on evidence relevant only to the charge against the co-defendant."

In the cases now before this court, presumably because of the absence of the evidence at the pretrial hearing, there is no proper proof that the separate defendants were married and living together in the residence. The separate crimes with which each of these two separate defendants was charged occurred at different times and in different places. The acts or transactions were not even in the same house or the same vehicle. The majority opinion here seems to assume that the two separate crimes here are the same act or transaction, simply because they are the same kind of a crime. The majority opinion states: "There is evidence in the record to indicate a common scheme or plan on the part of these two defendants to distribute drugs illegally." But the defendants here are not charged with distributing drugs illegally. They

are each charged with the separate crime of possession of controlled substances with intent to deliver, each at a separate location and each in personal possession. The statute requires that severance for separate trial be granted in such cases. The potential for prejudice is apparent and the evidence to establish the two separate crimes of the two separate defendants was utterly different. The motion for severance was clearly proper and should have been granted.